**This version includes the errata dated 14Nov02 - e**

## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-1440

DANIEL J. SANDSTROM, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    November 8, 2002    )

*Daniel G. Krasnegor,* and *Christopher A. Glaser*, both of Washington, D.C., were on the briefs for the appellant.

*Tim S. McClain*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Michael A. Leonard*, Deputy Assistant General Counsel; and *Edward V. Cassidy, Jr.*, all of Washington, D.C., were on the briefs for the appellee.

Before KRAMER, *Chief Judge*, and HOLDAWAY and IVERS, *Judges*.

IVERS, *Judge*, filed the opinion of the Court.  KRAMER, *Chief Judge*, filed a concurring opinion.

IVERS, *Judge*:  The veteran, Daniel J. Sandstrom, appeals from an April 28, 1999, Board of Veterans' Appeals (BVA or Board) decision that denied a claim of entitlement to interest on the retroactive payment of VA disability compensation benefits, based on a grant of an increased rate of special monthly compensation (SMC).  Record (R.) at 2.  Both the veteran and the Secretary have submitted briefs, and the veteran has submitted a reply brief.   This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

## I.  FACTS

The veteran served on active duty in the U.S. Army from February 1966 until February 1969. R. at 7. The veteran served a tour of duty in Vietnam, and was awarded combat decorations, including the Purple Heart. *Id.* In March 1969 the veteran submitted an application for VA disability compensation. R. at 10-11. An April 1969 VA rating decision awarded service connection for above-the-knee amputation of both lower limbs and assigned a 100% disability rating, effective February 8, 1969. The veteran was also awarded SMC pursuant to subsection (m) of 38 U.S.C. § 1114, because of "anatomical loss of both lower extremities at levels or with complications preventing natural knee action." R. at 13-14. In October 1969, VA denied a claim for SMC based upon the need for regular aid and attendance. R. at 16-17.

In 1993, the veteran submitted an informal claim for service connection for post-traumatic stress disorder (PTSD) and tinnitus, and for an increased evaluation for bilateral hearing loss and for residuals of hepatitis. R. at 24-25. A December 1993 VA rating decision, among other things, granted service connection for PTSD, assigned a noncompensable rating from February 1969, and a 10% disability rating effective July 7, 1993. R. at 27-30. The decision also confirmed the 100% evaluation for bilateral knee amputation and denied service connection for tinnitus. *Id.* The veteran submitted a Notice of Disagreement (NOD) in March 1994 concerning the denial of service connection for tinnitus, and the 10% disability rating for PTSD. R. at 32. He also submitted a claim for entitlement to SMC pursuant to 38 U.S.C. § 1114 (n). *Id.*

In May 1994, a VA rating decision granted "[e]ntitlement to greater [SMC] based upon the anatomical loss of both legs so near the hips as to prevent the use of prosthetic appliances," pursuant to 38 U.S.C. § 1114(n), and 38 C.F.R. § 3.350(d). R. at 35. The effective date for SMC subsection (n) benefits was July 7, 1993. R. at 37. The veteran submitted an NOD regarding the effective date for SMC under section 1114(n). R. at 39-40. A September 1994 VA rating decision denied that there was clear and unmistakable error (CUE) in the May 1994 VA rating decision. R. at 43-45.

In May 1995, the veteran's representative asserted that there was CUE in the rating decisions of April 1969, October 1969, December 1971, February 1977, and April 1982, concerning the establishment of SMC benefits under subsection (n) of 38 U.S.C. § 1114 and under 38 U.S.C. § 3.350(d). R. at 48. In May 1995 VA denied the veteran's claim for CUE. R. at 51-52. In May 1996, VA's Director of the Compensation and Pension Service determined that the veteran "never

2

used prostheses and as such SMC under subsection (n) is in order[,] effective the day after discharge, [February 8, 1969]. Corrective action should be taken under the provisions of 38 C.F.R. § 3.105(a)." R. at 81. That same month a hearing officer noted that an earlier decision contained CUE, and determined that "[e]ntitlement to retroactive benefits for [SMC] under subsection (n) is established effective day after discharge, February 8, 1969." R. at 85. In June 1996, the hearing officer's decision was implemented in a VA rating decision (R. at 89-90), and the veteran was notified that he would receive retroactive SMC benefits under section 1114(n), minus the benefits he had received under subsection (m), resulting in past-due benefits in the amount of $55,542. R. at 92-94. The veteran submitted an NOD in July 1996 in which he acknowledged he had received $55,542 in past due-benefits which represented dollar for dollar, the monthly benefits owed to him for the time period from February 1969 through June 1996. R. at 99-101. The veteran also acknowledged that the monthly SMC payments had been increased with authorized cost-of-living adjustments (COLAs), but that he was paid in deflated dollars due to inflation. *Id.*

In August 1996, VA responded to the veteran's letter and advised him that the "monthly compensation rates are established by law. These monthly rates are then adjusted, usually once a year, to reflect increases in the cost-of-living. While we can understand your argument, we have no choice in the matter. We can only pay the rates authorized by law." R. at 117. The veteran responded in an October 1996 letter that he should have received interest on his past-due benefits. R. at 121. VA informed the veteran that the law did not allow for the payment of interest on retroactive amounts payable, even in cases of error. R. at 123.

The veteran filed an NOD in June 1997, in which he noted that when other federal agencies are at fault they pay interest on monies owed. R. at 125-26. The issue addressed in the Board decision now before the Court was whether VA was required to pay interest on retroactive payments due the veteran. R. at 4.

## II. ANALYSIS

The veteran argues that VA erroneously calculated the rate of his retroactive benefits during the time period from February 1969 to July 1996 by applying the monthly rate in effect for February 1969, the effective date of the May 1996 corrected decision, then increasing the monthly amount due

by COLAs authorized during that time period. Appellant's Brief (Br.) at 9-10. The veteran asserts that the amount should be calculated according to the 1996 rate of $3,104 per month, for the entire time period from 1969 to 1996, so that the 1996 correction for CUE would have the "same effect," pursuant to 38 U.S.C. § 5109A and 38 C.F.R. § 3.105(a), as if the corrected decision had been made in 1969. *Id.*

> Section 5109A(b) provides:

> For the purposes of authorizing benefits, a rating or other adjudicative decision that constitutes a reversal or revision of a prior decision on the grounds of clear and unmistakable error has the *same effect* as if the decision had been on the date of the prior decision.

(Emphasis added). The language of 38 C.F.R. § 3.105(a) (2001), the regulation implementing section 5109A(b), closely follows the statutory language: "For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior unmistakable error has the *same effect* as if the corrected decision had been made on the date of the reversed decision." (Emphasis added). The veteran contends that the calculation he is arguing for would produce the "same effect" as if the correct decision had been made in 1969, because it would provide for a cost-of-living increase to offset inflation as Congress intended. *Id.*

The Court notes that the veteran has made this COLA argument below. R. at 136-39, 161. The Board did not consider that argument when making the decision here on appeal. In fact, the Board decision denied the veteran's claim solely on the basis of the prohibition against the payment of interest on retroactive awards. *Smith v. Gober*, 14 Vet.App. 227 (2000) [hereinafter "*Smith I*"], *aff'd sub nom. Smith v. Principi*, 281 F.3d 1384 (Fed. Cir. 2002) *cert. denied*, _ U.S._, _S.Ct._ (Oct. 7, 2002) [hereinafter *"Smith* II]." R. at 4.

The U. S. Court of Appeals for the Federal Circuit ("Federal Circuit") has held that, "[w]hile the Veterans Court may hear legal arguments raised for the first time with regard to a claim that is properly before the court, it is not compelled to do so in every instance." *Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000). In this instance, because the issue is one of statutory interpretation and no factual development is required, the Court will exercise its discretion, consider appellant's arguments, and decide the issue.

4

The veteran argues that Congress clearly provides for an increase for inflation for the time period he was denied access to his money pursuant to the "same effect" language of 38 U.S.C. § 5109A(b) and 38 C.F.R. § 3.105(a).

He further asserts that, if the Court does not find the plain language to be clear, both the statute and regulation are remedial in nature, and therefore, the Court should interpret them liberally to effectuate their purposes. Appellant's. Br. at 11-12. *See Smith (William) v. Brown*, 35 F.3d 1516, 1525 (Fed.Cir. 1994) (noting veterans benefits statutes are in the remedial category); *see also* 38 C.F.R. § 3.102 (2001) (veteran laws to be administered under a broad interpretation).

The veteran's argument hinges on the interpretation of the term "same effect." He asserts that his retroactive benefits must be adjusted to reflect inflation as intended by Congress. He contends that, while the formula used by the RO provides for the same amount of money that he would have received if timely paid, it does not have the "same effect," because the effect of the award is reduced since the amount is not adjusted for the cost-of-living increase as intended by Congress. Appellant's Br. at 9-10. The veteran argues that because money today is more valuable than it would be at some point in the future (time value of money) he should be compensated at the 1996 rate of $3,104 per month, for the entire period from 1969 to 1996. *See Atl. Mut. Ins. Co. v. Comm'r,* 523 U.S. 382, 383 (1998) (defining the time value of money as "the fact that '[a] dollar today is worth more than a dollar tomorrow'"); *see also P.A. Bergner & Co. v. Bank One*, 140 F.3d 1111, 1123 (7th Cir. 1998) ("[P]rejudgment interest should not be thought of as a windfall in any event; it is simply an ingredient of full compensation that corrects judgments for the time value of money.")*; In re Milwaukee Cheese Wis., Inc.*, 112 F.3d 845, 849 (7th Cir. 1997) ("Compensation deferred is compensation reduced by the time value of money."); *cf. IBM v. United States*, 201 F.3d 1367, 1374-75 (Fed.Cir. 2000). ("Congress has waived sovereign immunity in both *the tax code* and *the customs laws* to permit interest to be paid on certain refunds to allow for the time value of money when the Government has had the use for a period of time of money to which it is not lawfully entitled.") (emphasis added).

The proper interpretation of a statute is to be made by the Court de novo. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc). The starting point in interpreting a statute is examining the language itself, for "if the intent of Congress is clear, that is the end of the matter." *Cacatian v. West*,

12 Vet.App. 373, 376 (1999) (citing *Gardner v. Brown*, 5 F.3d 1456, 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994)). The plain meaning of the statute is found in examining the specific language at issue and the statute's overall structure. *Id.*; *see also Meeks v. West*, 12 Vet.App. 352, 354 (1999) ("Principles of statutory construction require that, where a statute has plain meaning, a Court shall give effect to that meaning . . . ."). The Court finds from the plain language of the term "same effect" of section 5109A(b), that it is not the clear intent of Congress to require the payment of a COLA to account for the effects of inflation as the veteran advocates. The term "same effect" cannot reasonably be read to provide explicitly for the payment of a COLA.

Even assuming without deciding that the language is ambiguous, to interpret the term "same effect" in section 5109(A)(b) and section 3.105(a) as the veteran proposes would result in the Court violating the strict prohibition against implied waivers of sovereign immunity, resulting in a payment of moneys from the Treasury. *See OPM v. Richmond*, 496 U.S. 414, 416 (1990)("We hold that payments of money from the Federal Treasury are limited to those authorized by statute. . . ."). The statutory and regulatory provisions that the veteran relies upon cannot be interpreted liberally in this instance in the absence of a waiver of sovereign immunity. Waivers of sovereign immunity must be "construed strictly in favor of the sovereign," *McMahon v. United States*, 342 U.S. 25, 27 (1951), and not "enlarge[d] . . . beyond what the language requires," *E. Transp. Co. v. United States*, 272 U.S. 675, 686 (1927). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

To do what the veteran advocates would require the Court to interpret the plain language of section 5109A(b) as an implied waiver of sovereign immunity. This the Court cannot do. The record reflects that the veteran has conceded receiving authorized COLAs for the relevant time period. R. at 100. He acknowledges that Congress did provide for cost-of-living adjustments authorized annually for 38 U.S.C. § 1114(n) compensation rates. Appellant's Br. at 10; Reply at 5. There is no legal authority to support the veteran's position that he is authorized anything more.

The U. S. Court of Appeals for the D.C. Circuit has held, in a case involving claims of sex discrimination pursuant to Title VII of the Civil Rights Act, that where courts are not specifically authorized by statute to supplement back-pay awards against the Federal Government by awarding

successful plaintiffs either prejudgment interest or a sum designed to compensate for the loss of the dollar's value due to inflation, those courts are barred from doing so by the doctrine of sovereign immunity. *Blake v. Califano,* 626 F.2d 891, 894-95 (D.C. Cir 1980). The court further noted that "[b]oth interest and an inflation adjustment serve the same general end of compensating the recipient for differences in the worth of her award between the date of actual receipt and the dates as of which the money should have been paid. If one is barred the other should also be; the same considerations govern." The same rule is applicable here because the same consideration–sovereign immunity–governs in both instances. In essence the veteran is requesting the payment of a cost-of-living increase for inflation in lieu of an already denied request for interest. The doctrine of sovereign immunity bars payment of either.

The veteran further asserts that this case is readily distinguishable from *Smith I, supra*. Appellant's Br. at 6-7. He is correct that the issue in question is distinguishable from that in *Smith I*, but the principle upon which *Smith I* was decided is equally applicable here. The veteran does not cite to any statutory authority which would provide for the payments he seeks. The Federal Circuit in *Smith II* found that the "same effect" language in 38 U.S.C. § 5109A(b) and 38 C.F.R. § 3.105(a) was not an express waiver of sovereign immunity for purposes of the payment of interest. *Smith II*, 281 F.3d at 1387. The *Smith II* court also noted that the veteran's "invocation of the canon of statutory construction in favor of veterans must similarly yield to the canon of statutory construction strictly disfavoring a waiver of the no-interest rule absent an express indication to the contrary." *Id.* at 1388 (citations omitted). In *Smith II*, the Federal Circuit noted that "[section] 5109A(b)'s 'same effect' language, which is at best ambiguous as to whether it refers to missed benefit payments only or missed benefit payments plus interest, is . . . not a clear waiver of the no-interest rule." *Id.* at 1387. The Federal Circuit's reasoning in declining to interpret the section 5109A(b) term "same effect" as a waiver of sovereign immunity for purposes of interest is equally applicable to the term "same effect" as a waiver of sovereign immunity for purposes of an increased COLA.

### III. CONCLUSION

After consideration of the veteran's brief and reply brief, the Secretary's brief, and the record, the Court holds that the veteran has not demonstrated that the Board committed either legal or factual

error which would warrant reversal or remand. The Court is also satisfied that the Board decision fulfills the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). Accordingly, the April 28, 1999, Board decision is AFFIRMED.

KRAMER, *Chief Judge*, concurring: For the reasons that follow, I concur in the affirmance of the April 28, 1999, Board of Veterans' Appeals (Board or BVA) decision.

Primarily, the appellant argues to this Court that the "same effect" language of 38 U.S.C. § 5109A(b) requires VA to pay to him $3,104.00, based on the 1996 disability compensation rate under 38 U.S.C. § 1114(n), for every month from February 1969 (month of the effective date for an award made based on a finding that an April 1969 rating decision contained clear and unmistakable error (CUE)) to May 1996 (month of rating decision correcting CUE). *See* Appellant's Brief (Br.) at 9-10. However, section 5109A(b) provides that a rating or other adjudicative decision issued for the purpose of reversing or revising a prior decision on the grounds of CUE "has the same effect as if the decision had been made on the date of the prior decision." 38 U.S.C. § 5109A(b); *see* 38 C.F.R. § 3.105(a) (2001). In essence, the appellant's argument reads out of the statute the words "as if the decision had been made on the date of the prior decision," and ignores the most basic principle of statutory construction–that statutes must be read as a whole. *See Splane v. West*, 216 F.3d 1058, 1068-69 (Fed. Cir. 2000) ("[C]anons of construction . . . require us to give effect to the clear language of a statute and avoid rendering any portions meaningless or superfluous."); *Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) ("'In expounding [on] a statute, we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law . . . .'" (citations omitted)). In this regard, I believe that, when harmonized with the whole of section 5109A(b), the plain meaning of the phrase "as if the decision had been made on the date of the prior decision" is clear in that the effect of a revised decision is to make the claimant whole as of the date of the decision that contained CUE, not as of the date of the decision that found CUE. Therefore, as applied to the appellant, section 5109A(b) entitles him to receive a retroactive award of benefits based on the monthly amount prescribed by statute in 1969 ($411.69) and in the months after February 1969 through July 1996; he is not entitled to receive an award based on the 1996 monthly amount ($3,104.00) for each of the months in between 1969 and 1996 because that amount was not

provided for by statute during all of those months. Contrary to the appellant's argument, *see* Appellant's Br. at 5, 9-10, nowhere does section 5109A(b) provide that the corrected decision shall have the effect that the prior decision containing CUE had never been made; rather, the statute provides, in effect, that the erroneous decision, when made, was decided correctly.

Moreover, the appellant's argument that his case is distinguishable from *Smith (Claudus) v. Gober*, 14 Vet.App. 227 (2000) (holding that 38 U.S.C. § 503 is not express waiver of sovereign immunity that would permit interest payment on award of past-due benefits), *aff'd sub nom. Smith v. Principi*, 281 F.3d 1384 (Fed. Cir. 2002), is unavailing. In fact, the appellant, in June 2000, filed with the Court a motion to consolidate his case with *Smith (Claudus)*. *See* Appellant's June 5, 2000, Motion to Consolidate. Indeed, the appellant, by requesting that he be awarded an overall cost of living adjustment (COLA) to adjust his award to the present value, is seeking compensation for the loss of use or delayed receipt of the money that composes his benefits award. *See Library of Cong. v. Shaw*, 478 U.S. 310, 321 (1986) ("[T]he force of the no-interest rule cannot be avoided simply by devising a new name for an old institution . . . ."). Given that section 5109A(b) does not explicitly award interest, COLA, or any other amount to compensate for loss of use or delayed receipt, it cannot be said that Congress intended to grant any such benefit under that provision. *See Library of Cong.,* 478 U.S. at 318 ("When Congress has intended to waive the United States' immunity with respect to interest, it has done so expressly . . . ."); *Smith v. Principi*, 281 F.3d at 1387-88 (neither section 503 nor section 5109A(b) constitutes express waiver of no-interest rule). Furthermore, because a COLA increase is not available as a matter of law, the appellant's argument that he is entitled to a remand because the Board purportedly did not address whether section 5109A(b) permits such an overall COLA payment must fail. *See* 38 U.S.C. § 7261(b) (providing that "the Court shall take due account of the rule of prejudicial error"); *Sabonis v. Brown*, 6 Vet.App. 426, 430 (1994); *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991).

Alternatively, the appellant argues that the Court should vacate the April 1999 decision and remand his case for the Board to determine in the first instance whether the Secretary will exercise his discretion under 38 U.S.C. § 503 to grant an overall COLA. *See* Appellant's Br. at 13-15. I note that, because the authority to grant equitable relief under section 503 is solely within the Secretary's discretion, neither the Board nor this Court can provide such relief, and thus that authority is not an

appropriate ground on which the Court may remand this matter to the Board. *See Erspamer v. Brown*, 9 Vet.App. 507, 512 (1996).