**Daniel J. SANDSTROM, Claimant–Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.**

**No. 03–7075.**

United States Court of Appeals, Federal Circuit.

Feb. 20, 2004.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, KS, argued for claimant-appellant.

Kenneth S. Kessler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Kathryn A. Bleecker, Assistant Director. Of counsel on the brief were Richard J. Hipolit, Deputy Assistant General Counsel; and Martie S. Adelman, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Before MAYER, Chief Judge, GAJARSA and DYK, Circuit Judges.

GAJARSA, Circuit Judge.

Daniel J. Sandstrom ("Sandstrom") appeals from the November 8, 2002 ruling of the Court of Appeals for Veterans Claims ("CAVC"), affirming the April 28, 1999 Board of Veterans Appeals ("BVA") denial of his claim of entitlement to retroactive payment of Department of Veterans Affairs ("VA") disability benefits at an increased statutory rate. *Sandstrom v. Principi*, 16 Vet.App. 481 (2002). Because in the absence of a clear, explicit waiver of sovereign immunity from liability for interest, the United States government ("the government") pays all judgments and amounts due in what economists call "nominal dollars" rather than in economic "real dollars,"[1] and because Congress has not statutorily waived the government's sovereign immunity from interest payments necessary to compensate a veteran who has been damaged by a clear and unmistakable error ("CUE") by the government, we affirm.

## BACKGROUND

Sandstrom served with distinction in the U.S. Army from February 1966 until February 1969, receiving various combat decorations including the Purple Heart. In February 1969, both of Sandstrom's legs were amputated above the knee. In March 1969, Sandstrom submitted an application for VA disability compensation. In April 1969, a VA rating decision awarded Sandstrom service connection for above-the-knee amputation of both lower limbs, and assigned him a 100% disability rating, effective February 8, 1969. At that time, Sandstrom was also awarded special monthly compensation ("SMC"), pursuant to 38 U.S.C. § 1114(m), because of the "anatomical loss of both lower extremities at levels or with complications preventing natural knee action." *Id.*

Sandstrom's classification under § 1114(m) was an error because he had in fact lost both knees, rendering his disability more extreme than those of veterans who experienced complications with their natural knee action. The proper classification was under § 1114(n), which includes veterans who have "suffered the anatomical loss of both legs so near the hip as to prevent the use of prosthetic appliances." *Id.* Had Sandstrom been classified appropriately, he would have been entitled to a greater SMC, and would therefore have received larger benefits each month beginning in April 1969.

In May 1994, a VA rating decision recognized that Sandstrom had been inappropriately classified, and granted Sandstrom "entitlement to greater [SMC] based upon the anatomical loss of both legs so near the hips as to prevent the use of prosthetic appliances," pursuant to 38 U.S.C. § 1114(n), effective July 7, 1993. *Sandstrom*, 16 Vet.App. at 482. This rating decision corrected the error on a going forward basis, but did not address the government's past undercompensation of Sandstrom.

---

1. Nominal dollars retain their *number* over time, while real dollars retain their *value*. For example, one nominal dollar in 1969, when Sandstrom was injured in combat, remained one nominal dollar in 1996, when the government admitted its CUE. One real dollar in 1969, however, would retain its purchasing power, and would have been worth between four and five nominal dollars by 1996. *See e.g.*, Bureau of Labor Statistics, *Consumer Price Indices*, http:// www.bls.gov/cpi/home.htm# data (last visited, February 10, 2004). The relationship between real and nominal dollars is governed by inflation. Interest paid at the rate of inflation allows payments to retain their real value.

In May 1995, a veteran's representative asserted that the VA's past rating decisions, compensating Sandstrom under § 1114(m) rather than under § 1114(n) and thereby misclassifying the extent of his amputation, had been a clear and unmistakable error (CUE). In June 1996, a VA rating decision implemented a hearing officer's determination that corrective action was warranted under 38 C.F.R. § 3.105(a), the regulation for correcting CUE. This June 1996 rating decision established Sandstrom's entitlement to retroactive benefits for SMC under subsection (n), effective February 8, 1969, the day after his discharge. This rating decision addressed the government's past undercompensation of Sandstrom.

The VA notified Sandstrom in June 1996 that he would receive retroactive SMC benefits under section 1114(n), minus the benefits that he had already received under subsection (m), resulting in past-due benefits in the amount of $55,542, an amount calculated in nominal dollars. Sandstrom submitted a notice of disagreement ("NOD") in July 1996. In this NOD, Sandstrom acknowledged that his receipt of the $55,542 represented, dollar for dollar, the monthly benefits owed to him for the time period from February 1969 through June 1996, *in nominal terms.* Sandstrom also acknowledged that these payments had incorporated the cost-of-living adjustments ("COLAs") that had been authorized and in effect for each month for which he received payment, but complained that because of inflation between 1969 and 1996, he was nevertheless paid in deflated nominal dollars, rather than in real dollars reflecting the actual harm caused by the VA's CUE. Sandstrom asserted that he should have received the adjusted amounts, in real dollars as reflected in the statutory COLAs applied between 1969 and 1996, for every month

for which the government had originally undercompensated him.

In August 1996, the VA responded by advising Sandstrom that the "monthly compensation rates are established by law. These monthly rates are then adjusted, usually once a year, to reflect increases in the cost-of-living. While we can understand your argument, we have no choice in the matter. We can only pay the rates authorized by law." In October 1996, Sandstrom contended that he should have received interest on his past-due benefits, and that without the interest necessary to compensate him in real dollars, he was still suffering significant damage due to the government's CUE. The VA responded that the law does not allow for the payment of interest on retroactive amounts payable, even in cases of CUE.

Sandstrom filed an NOD in June 1997. The BVA ruled that Sandstrom was requesting interest payments from which the government is exempt because of sovereign immunity, and on April 28, 1999, denied Sandstrom's request for adjustments to his retroactive payments. Sandstrom appealed to the CAVC. The CAVC affirmed the BVA's denial on November 8, 2002. Sandstrom filed this appeal, seeking a review of the CAVC's interpretation of two statutes, 38 U.S.C. §§ 5109A(b), 1114(n). We have jurisdiction under 38 U.S.C. §§ 7292(a), (c).

## DISCUSSION

■ We review the CAVC's interpretation of a statute de novo. *Smith v. Principi,* 281 F.3d 1384, 1386 (Fed.Cir.2002). The CUE committed by the VA entitled Sandstrom to receive retroactive adjustments to his SMC, as prescribed by statute:

> [I]f the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of both arms

at levels, or with complications, preventing natural elbow action with prostheses in place, has suffered the anatomical loss of both legs so near the hip as to prevent the use of prosthetic appliances, or has suffered the anatomical loss of one arm and one leg so near the shoulder and hip as to prevent the use of prosthetic appliances, or has suffered the anatomical loss of both eyes, or has suffered blindness without light perception in both eyes, the monthly compensation shall be $ 3,425;

38 U.S.C. § 1114(n).[2] The amount of monthly compensation specified in the statute has varied over time to incorporate a COLA.

■ In 1996, when the VA determined that Sandstrom was entitled to retroactive SMC adjustments because of a CUE, the government paid Sandstrom the nominal amount that he would have received had there never been any error, as specified by the versions of § 1114(n) in effect at the time that the payments should have been made. For example, the government calculated Sandstrom's entitlement for May 1969 as the difference between the dollar amounts in effect in May 1969 for § 1114(m), under which he was paid, and § 1114(n), under which he should have been paid. Because Sandstrom received $550 in May 1969, when he should have received $625, the government awarded him the $75 difference in 1996.

The government contends that its calculation of total nominal dollars was compelled by the statutory requirement that:

[f]or the purposes of authorizing benefits, a rating or other adjudicative decision that constitutes a reversal or revision of a prior decision on the grounds of clear and unmistakable error has the

*same effect* as if the decision had been made on the date of the prior decision.

38 U.S.C. § 5109A(b) (emphasis added).

Sandstrom disagrees. He claims that the payment of nominal 1969 dollars (for example) made in 1996 did not have the "same effect" as a payment of nominal 1969 dollars made in 1969. His argument is that in order to truly have the "same effect" as a decision that had been made correctly in the first place, the government would have to compensate him with inflated real dollars. Sandstrom further claims that Congress intended the annual COLAs to keep the statutory compensation constant in real dollars, and that he was thus entitled to $3104 (the amount specified by statute in 1996) in 1996 dollars, per month, retroactively throughout the entire period.

Sandstrom submitted a number of arguments grounded in economics, logic, and public policy. His arguments have substantial merit as a matter of policy. Nominal dollars and real dollars are not the same, and late payment of devalued nominal dollars does not have the same effect as a timely payment. There is no question that Sandstrom is correct as a matter of economics and as a matter of logic. None of this is relevant, however, because the VA interpreted the existing law correctly.

Controlling legal authority is directly on point. Under the longstanding "no-interest rule," sovereign immunity shields the U.S. government from interest charges for which it would otherwise be liable, unless it explicitly waives that immunity:

The case, therefore, falls within the well-settled principle, that the United States are not liable to pay interest on claims against them, in the absence of express statutory provision to that effect. It has been established, as a general rule, in

2. The statute as cited contains the 2003 dollar amount. Dollar amounts for all other years differed annually, based upon the COLAs enacted by Congress.

the practice of the government, that interest is not allowed on claims against it, whether such claims originate in contract or in tort, and whether they arise in the ordinary business of administration or under private acts of relief, passed by Congress on special application. The only recognized exceptions are, where the government stipulates to pay interest and where interest is given expressly by an act of Congress, either by the name of interest or by that of damages.

*Angarica v. Bayard,* 127 U.S. 251, 260, 8 S.Ct. 1156, 32 L.Ed. 159 (1888).

Sandstrom contends that because his request is for a COLA, rather than for interest, the no-interest rule should not apply. This argument elevates form over function. Economists use interest, COLAs, indices, and various other mechanisms to translate time series of nominal dollars into meaningful constant dollars. They may apply different labels at different times, but the purpose of all such adjustment mechanisms is identical.[3] The government relies on its sovereign immunity shield to deny all prejudgment-type interest payments.

Sandstrom also argues that he is simply requesting payment of the dollar amount written into the version of 38 U.S.C. § 1114(n) in effect at the time of the CUE correction. This argument would be tantamount to reading the statute's incorporation of an explicit dollar amount as a waiver of sovereign immunity and as an expression of a willingness to compensate veterans disadvantaged by a CUE in real, rather than in nominal, dollars. This argument fails because § 1114 does not address the issue of retroactive payments, much less provide a clear, explicit waiver of the government's sovereign immunity from interest payments accruing to retroactive payments.

Sandstrom's only substantive argument draws upon the "same effect" language of § 5109A(b). But this court has already ruled that: "[38 U.S.C.] § 5109A(b)'s 'same effect' language, which is at best ambiguous as to whether it refers to missed benefit payments only or missed benefit payments plus interest, is ... not a clear waiver of the no-interest rule." *Smith,* 281 F.3d at 1387. Though Sandstrom points to some minor factual differences between his claim and Smith's (most prominently, in the statutory basis for their underlying claims), those differences do not change the result. If the "same effect" language did not waive sovereign immunity for Smith, it cannot waive it for Sandstrom.

Sandstrom's best argument therefore rests entirely upon statutory interpretation: he asserts that the VA misinterpret-

---

**3.** In *Atkins v. United States,* 214 Ct.Cl. 186, 556 F.2d 1028, 1040–1051 (Ct.Cl.1977) (en banc), the federal judiciary argued that the erosion in the real dollar value of judicial salaries due to inflation constituted a "diminution" of judicial salaries in the sense prohibited by the Compensation Clause, U.S. Const. Art. III, § 1. The plaintiffs cited James Madison, who in 1787 told the Constitutional Convention: "The variations in the value of money, may be guarded agst. by taking for a standard wheat or some other thing of permanent value." *Id.* at 1046 (citation omitted). According to the plaintiffs, just as Madison thought using wheat as the measure of compensation would guard against real salary diminution, by adjusting automatically for changes in the nominal dollar cost of living, so must [the court] read the Compensation Clause as instructing payment to plaintiffs of as many 1977 dollars as would equal in real value their 1969–dollar salaries.

*Id.* at 1047. The Court of Claims noted that the Constitutional Convention had rejected Madison's argument, *id.,* and ruled that judicial compensation held constant in nominal terms had not been "diminished" unconstitutionally. *Id.* at 1051.

ed the statutes mandating compensation to veterans following a finding of CUE. This court's jurisdiction to hear such arguments limits us to reviewing the VA's interpretation of the applicable statutes. 38 U.S.C. § 7292(c); *Forshey v. Principi*, 284 F.3d 1335, 1338 (Fed.Cir.2002) (en banc). The statutory language and longstanding principles governing sovereign immunity provide clear support for the VA's interpretation that payments to a veteran following a finding of CUE may not include interest adjustments. *Smith*, 281 F.3d at 1387.

This court remains bound by the Supreme Court's ruling in *Angarica*, 127 U.S. at 260, 8 S.Ct. 1156. It is for Congress to remedy the inequities inherent in the limits imposed by the no-interest rule. Though the statutory language of § 5109A(b) directs the VA to correct its clear and unmistakable errors by paying the veteran an amount that has the "same effect as if the decision had been made on the date of the prior decision," *id.*, the no-interest rule limits the VA's ability to correct its own errors by paying a veteran enough to place him in the same financial position that he would have attained had the agency never committed the error. Without a clear, explicit waiver of sovereign immunity, compensatory payments from the government cannot have the same effect as timely payments regardless of the statutory language. The existing statutory language does not waive sovereign immunity, either explicitly or by implication. The VA's decision to pay Sandstrom in nominal dollars was legally correct.

## CONCLUSION

Because the CAVC correctly concluded that the government had not waived its sovereign immunity when compensating veterans harmed by the government's own clear and unmistakable errors, we affirm its denial of Sandstrom's claim of entitlement to retroactive payment of his VA disability benefits at an increased statutory rate.

AFFIRMED.

## COSTS

Each party shall bear its own costs.