SCHOELEN, Judge,
concurring in part and dissenting in part:
I respectfully dissent from part II of the Court’s order because I believe the Secretary has not met his burden of establishing that a stay of the precedential effect of the Court’s decision in Haas v. Nicholson, 20 Vet.App. 257 (2006), appeal docketed, No.2007-7037 (Fed.Cir. Nov.8, 2006), or that a stay of cases related to Haas pending before VA is warranted.[4] I do not believe that the Court has properly applied the four-factor test from Standard Havens Products, Inc. v. Gencor Industries, Inc., 897 F.2d 511 (Fed.Cir.1990), which we decided to follow in both Ribaudo v. Nicholson, 20 Vet.App. 552, 560 (2007) (en banc), appeal filed (Fed.Cir. Apr. 2, 2007), and Ramsey v. Nicholson, 20 Vet.App. 16, 38-39 (2006), when considering the appropriateness of a stay pending appeal. The four-factor analysis is best described as a “sliding scale,” because the factors are not given equal weight, the moving party need not satisfy all the factors, and a strong showing as to one of the four elements may overcome a weaker showing as to the other three (or vice versa). See Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 388 (7th Cir.1984) (observing that courts have taken a “sliding scale” approach to the determination of whether a stay is appropriate).
The application of Standard Havens is best understood by studying the treatment other courts have given to the first factor of the test. If a movant establishes a strong likelihood of success on the merits, courts will grant a stay unless the nonmov-ing party would otherwise be severely prejudiced. Conversely, if a movant is unlikely to succeed on the merits, courts *149 will grant a stay only if the moving party would otherwise be severely prejudiced. However, in cases where the likelihood of success is not clear, that is, where the moving party has only identified a substantial legal question, to grant a stay, courts will require the moving party to show that the remaining factors (balance of harms and the public interest) weigh in its favor. See Standard Havens, 897 F.2d at 513 (stating that a stay will be granted “ ‘[w]here [movant] establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits,’ ;provided the other factors militate in mov-ant’s favor” (quoting Hilton v. Braunskill, 481 U.S. 770, 778, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987))); E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277, 278-79 (Fed.Cir.1987) (granting motion to stay upon a movant’s establishing both that there were substantial legal issues and that the balance of harms and the public interest weighed in its favor); Cuomo v. Nuclear Regulatory Comm’n, 772 F.2d 972, 974 (D.C.Cir.1985) (“Probability of success is inversely proportional to the degree of irreparable injury evidenced. A stay may be granted with either a high probability of success and some injury, or vice versa.”)-, Roland Mach., 749 F.2d at 387 (“The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.”); Wash. Metro. Area Transit Comm’n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C.Cir.1977) (“The necessary ‘level’ or ‘degree’ of possibility of success will vary according to the court’s assessment of the other factors.”).
I. Likelihood of Success on the Merits of the Appeal
We can do little more than speculate as to how the Federal Circuit will resolve the appeal of our decision in Haas. That said, I agree with the majority’s observation that a number of rulings in Haas were issues of first impression in this Court. Ante at 141-42. Thus, I generally agree with the majority that the Secretary has presented a substantial legal question for the Federal Circuit to address in Haas.
However, I disagree with the majority regarding the effect of finding that there is a “substantial legal question” raised by the Secretary. The majority states that this finding favors granting the Secretary’s motion for a stay. See ante at 141-42, 144-45 (observing that the first factor favors the Secretary). I disagree. The cases cited above clearly stand for the proposition that merely presenting a substantial legal question (as opposed to showing a strong likelihood of success) weighs neither in favor of, nor against, granting a stay. Rather, such a finding essentially renders this factor neutral so that the Secretary must prove that the balance of harms and the public interest favor granting a stay. See Standard Havens, 897 F.2d at 513 (stating that a stay will be granted where the movant demonstrates a substantial case on the merits, “provided the other factors militate in movant’s favor”); see also E.I. DuPont de Nemours, 835 F.2d at 278-79 (granting a motion for a stay “[i]n view of the substantial legal issues presented on appeal, the harm to [the moving party], the harm to the public, and the comparative lack of harm to [the non-moving party]”). Thus, I would require that the Secretary establish that the balance of the remaining factors militate in favor of a stay. See Standard Havens, E.I. DuPont de Nemours, Cuomo, Roland Mach., and Wash. Metro. Area Transit, all supra.
II. Irreparable Harm
I agree with the majority’s conclusion that the risk of irreparable harm to the Secretary (or absence thereof) weighs *150 against granting the Secretary’s motion for a stay. In short, I do not believe that the Secretary’s expenditure of resources constitutes irreparable harm. VA’s resources are limited only by congressional appropriations. See U.S. Const, art. I, § 9, cl. 7 (“No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law....”). Nothing prohibits VA from seeking and obtaining additional appropriations from Congress in the event that a flood of claims is received in the wake of our decision in Haas. I fully acknowledge that the Treasury is not a limitless source of funds. Nonetheless, if veterans and their survivors are motivated to file claims after our decision in Haas, VA will still be required to develop each and every one of these claims regardless of how Haas is ultimately decided and regardless of whether the Court stays adjudication of these claims pending Haas. That is, many of the resources the Secretary claims would be expended wastefully should Haas be overturned on appeal would eventually be consumed by the development of these claims, regardless of when or how they are decided. Moreover, even if the Secretary prevails in Haas, the Secretary will be obligated to consider these claims under other theories, such as direct service connection. See Schroeder v. West, 212 F.3d 1265, 1271 (Fed.Cir.2000) (stating that the duty to assist “attaches to the investigation of all possible in-service causes of that current disability, including those unknown to the veteran”). The only additional costs that could be expended wastefully are the costs of rendering revised decisions and the costs of recouping any benefits granted, assuming Haas is reversed.[5] I recognize these costs are likely not de minimis, but the Secretary has completely failed to establish that they are substantial or irreparable. See Black's Law Dictionary 801 (8th ed.2004) (defining “irreparable injury” as injury “that cannot be adequately measured or compensated by money”); cf. Standard Havens, 897 F.2d at 515 (finding irreparable injury where a party, through affidavits, established that, in the absence of a stay, a company is likely to suffer layoffs, immediate insolvency, and possibly extinction); UST v. United States, 831 F.2d 1028, 1032 (Fed.Cir.1987) (finding that expenses and efforts expended in the defense of litigation do not constitute “irreparable injury”); Cuomo, 772 F.2d at 976-77 (declining to find irreparable harm based upon mere unproven speculation).
The issues considered in the majority’s order in the two paragraphs beginning with “Second” and “Third” in part II.B were not raised by the Secretary in his motion for a stay. It is the Secretary who bears the burden of establishing that a stay is warranted. Because these issues were not raised by the Secretary in his motion for a stay and because Mr. Ribaudo has not had the opportunity to address them, I believe that they are not appropriate issues for the Court to consider.
Furthermore, I cannot agree with the majority’s consideration of how today’s decision will affect veterans service organizations and parties possessing records relevant to any claim affected by Haas. As to the interests of veterans service organizations, I note that The American Legion brought its own petition, identical to Mr. Ribaudo’s, on behalf of its members. See Am. Legion v. Nicholson, 21 Vet.App. 1 (2007) (dismissing The American Legion’s petition, identical to Mr. Ribaudo’s, for *151 lack of standing), appeal filed (Fed.Cir. Mar. 29, 2007). The American Legion’s Web site bills The American Legion as the nation’s largest veterans service organization and claims nearly 3,000,000 members.[6] Furthermore, in Ramsey, supra, the petitioner was represented by attorneys employed by the Disabled American Veterans (DAV), which has, according to its annual report, nearly 1,400,000 members.[7] Although this Court sought briefs from amici curiae, American Legion v. Nicholson, 20 Vet.App. 481 (2006) (en banc order), no veterans organization or individual entered an appearance as amicus supporting the Secretary. In fact, The American Legion (the only amicus appearing in this case) supported Mr. Ribaudo’s petition. Ribau-do, 20 Vet.App. at 555. To suggest that not granting the Secretary’s motion for a stay would adversely affect these organizations presumes that they are acting against the interests of their members. I do not agree with such a presumption. Finally, as emphasized above, assistance in the development of claims conducted by these organizations as well as resources expended by any other party possessing relevant records must occur regardless of the result in Haas and regardless of when any claims affected by Haas are adjudicated.
In conclusion, I believe the Secretary has not shown that he would be irreparably harmed should the Court not grant the stay and, accordingly, this factor weighs against granting the Secretary’s motion for a stay.
III. Impact on Nonmoving Parties
I also agree with the majority that the potential for harm to the nonmoving parties weighs against granting the Secretary’s motion.[8] Nevertheless, I wish to emphasize the seriousness of the diseases listed in 38 C.F.R. § 3.309(e) that the Secretary has determined to be associated with Agent Orange exposure. Here is the entire list:
Chloracne or other acneform disease consistent with chloracne
Type 2 diabetes (also known as Type II diabetes mellitus or adult-onset diabetes)

Hodgkin’s disease

Chronic lymphocytic leukemia

Multiple myeloma

Non-Hodgkin’s lymphoma

Acute and subacute peripheral neuropa-thy
Porphyria cutanea tarda

Prostate cancer

Respiratory cancers (cancer of the lung, bronchus, larynx, or trachea)
Soft-tissue sarcoma (other than osteo-sarcoma, chondrosarcoma, Kaposi’s sarcoma, or mesothelioma)
38 C.F.R. § 3.309(e) (2006) (emphasis added). The majority of these conditions are cancers that can be life threatening. In Ramsey, when we confronted this issue the first time, the claims were related to tinnitus, a disease of the ear that could not be reasonably considered life threatening. *152 But, in this case, the serious, life-threatening nature of the conditions that have been linked to Agent Orange exposure cannot be overstated. That veterans suffering from these life-threatening conditions could die while the Secretary’s appeal of Haas is pending is a factor I believe merits greater weight than the majority has assigned to it. See ante at 143-44.
Additionally, I find wholly unpersuasive the assertion made by the Secretary that Mr. Ribaudo (and other similarly situated claimants) would be made whole should Haas be affirmed on appeal. The Secretary disregards the obvious reality that, should no stay be granted, such claimants would have money in hand sooner. Given that VA does not pay interest on retroactive awards of benefits, see Sandstrom v. Principi, 358 F.3d 1376 (Fed.Cir.2004), delaying the payment of benefits would not render such claimants whole monetarily because the failure to provide benefits immediately would have substantial repercussions. See, e.g., Marcus v. Sullivan, 926 F.2d 604, 614 (7th Cir.1991) (“The Secretary argues that claimants who are eventually successful in the administrative process can obtain full benefits, though only retroactively. A delayed receipt of disability benefits, however, cannot suffice to make the claimant whole. Any delay potentially subjects claimants to deteriorating health, and even death. Claimants need to receive funds promptly because they use their benefits to purchase the very. necessities of life.” (citations omitted)). Ultimately, however, the risk that veterans may die without their claims having been developed is far more compelling in my weighing of harms. Any accrued-benefits claims based on those veterans’ entitlements will be adversely affected because accrued benefits may only be awarded based on evidence before VA at the time of a veteran’s death. See 38 U.S.C. § 5121. The very real risk of irreparable harm to veterans with claims affected by Haas weighs strongly against granting the Secretary’s stay motion.
IV. Public Interest
When considering where the interest of the public lies in this matter, I find this case similar to Standard Havens, where the Federal Circuit observed that the parties’ arguments “essentially negate one another” and that “the fourth factor favors neither party.” Standard Havens, 897 F.2d at 516. On one hand, the Secretary plays the role of the guardian of the public fisc. On the other hand, Mr. Ribaudo appeals to the general patriotic notion that Congress chose to give special consideration to those who put their lives on the line during a time of war in service to our country. Although the public has an interest in compensating veterans for their sacrifices for our country, the public has no interest in awarding compensation to those who are not legally entitled to it. Nevertheless, the people’s representatives have made clear that timely adjudications should be the goal of VA. See, e.g., 140 Cong. Rec. S4758 (1994) (statement of Sen. Rockefeller) (stating that “if the reality is that it takes months or years to resolve a claim, the individual claimant is not being afforded proper treatment. To force a veteran to wait for more than 2 years for a [Board] decision — after he or she has already waited over 200 days for a regional office decision on the original claim — is unconscionable.”). It is true that, without granting a stay, some other veterans may have to wait longer for the adjudication of their claims. However, the adjudication of the most serious cases (such as those involving veterans with serious health or financial issues) can be expedited. See 38 U.S.C. § 7107(a)(2)(B). There is simply no way for the Court to find that these contradictory interests favor one party or *153 the other. The competing public interests cited by each party are equally compelling.
As to the majority’s consideration of the public interest, I dispute the assertion that not granting a stay would put a burden on the adjudication system. Surely granting the stay would, albeit temporarily, relieve some of the burdens on the adjudication system. However, the Secretary has not established the degree to which granting the stay would relieve the burden. As I have made clear above, whether these Haas-related claims are adjudicated now or at some point in the future, they must be developed and adjudicated in accordance with law. See, e.g., 38 U.S.C. §§ 5103, 5103A. Although the Secretary and the majority suggest that the adjudication of non-Haas-related claims would be delayed by the adjudication of Haas-related claims, that is not necessarily the case. Denying the Secretary’s motion merely preserves the status quo, where decisions will be issued in the ordinary course of business and, generally, in the order in which the claims were received. See 38 U.S.C. § 7107. Requiring the Secretary simply to adjudicate claims in the ordinary course of business would not “add[ ] to an already overburdened system.” Mason v. Nicholson, 20 Vet.App. 279, 289 (2006). Surely, if the Secretary’s motion for a stay is denied, the Secretary will adjudicate some Haas-related claims and may have to expend additional resources readjudicating such claims if Haas is reversed on appeal.[9] However, many of the claims filed after Haas issued are unlikely to be developed and adjudicated before the Haas appeal is resolved.
In addition, denying the Secretary’s motion would not require the immediate adjudication of all Haas-related claims. Surely some indeterminate number of veterans who have claims that have nothing to do with Haas would have the adjudication of their claims delayed for an indeterminate period of time. But it is not as if the Secretary must set all other claims aside in order to decide those related to Haas. Finally, that the number of veterans and the amount of time is indeterminable further illustrates the Secretary’s failure to produce an adequate argument, that is, one supported by more than vague, unsubstantiated assertions, in support of his motion.
The Secretary has asserted: “Based on information provided by the Defense Manpower Data Center, the Haas decision could extend the presumption of exposure to herbicide to as many as approximately 832,000 veterans not previously covered.” Secretary’s Motion at 10. Although the majority characterizes this assertion as “not disputed” (ante at -), I find the Secretary’s assertion that Haas could affect 832,000 veterans to be specious at best. First, such an unsubstantiated and unsupported statement in a pleading is not evidence. The Secretary cites no authority to support his assertion that 832,000 veterans may be affected by Haas. The Secretary provides no affidavits (which, unlike briefs, must contain oaths or affirmations as to the accuracy of their content) in support of his motion. He simply presents a bald, unsubstantiated statement in a pleading. See U.S. VetAjp. R. 21(a) (stating that petitioners for extraordinary relief must, among other things, “include *154 an appendix containing copies of any order or decision or any other documents necessary to understand and support the petition”), 27(a) (observing that motions may be “supported by briefs, affidavits, or other papers”), 28(a) (stating that briefs must contain, among other things, “an argument ... with citations to the authorities and parts of the record on appeal relied on”). Thus, even if Mr. Ribaudo does not object to the number provided by the Secretary, the accuracy of the Secretary’s assertion has not been established.
Even assuming that the Secretary did provide a copy of this estimate from the Defense Manpower Data Center that 832,-000 veterans may be entitled to presumptive service connection under Haas, I am left with several questions: How many veterans suffer from a disease for which presumptive service connection based on exposure to Agent Orange is warranted? What percentage of those veterans will ever file a claim with VA? How many claims will be decided before Haas is finally decided? How can anyone know whether these veterans will be awarded presumptive service connection based on the Secretary’s interpretation of 38 U.S.C. § 1116(f) — that is, how can anyone know that all 832,000 veterans never set foot on land in the Republic of Vietnam? How is it known that these veterans could not be entitled to service connection based upon other theories? There is simply no way to know the answers to all of these questions until such claims are adjudicated. In this regard, I note the equivocal language used in the Secretary’s motion: “[T]he Haas decision could extend the presumption of exposure to herbicide to as many as 832,-000 veterans not previously covered.” Secretary’s Motion at 10 (emphases added). Absent any proof provided by the Secretary, I simply cannot accept the specious suggestion that Haas could create entitlement for 832,000 veterans. See Cuomo, 772 F.2d at 977 (observing that asserted harms are tested “for substantiality, likelihood of occurrence and adequacy of proof’). Thus, I cannot find that this factor weighs in favor of granting the Secretary’s motion for a stay.
V. Balancing of the Factors
Because I do not find any of the factors to militate in favor of granting the Secretary’s motion for a stay, I find that the Secretary has not proven that a stay of cases pending before VA affected by Haas is warranted. Thus, I would deny the Secretary’s motion and I dissent from the Court’s contrary holding.
The circumstances in Standard Havens provide an apt contrast to the circumstances in this case. In Standard Havens, the Federal Circuit granted a motion for a stay pending appeal after finding the moving party demonstrated (1) a substantial legal question on the merits; (2) that it would suffer catastrophic and irreparable harm should a stay not be granted; (3) that the nonmoving party presented mere speculative harm; and (4) a neutral showing as to the public interest Standard Havens, 897 F.2d at 516. In contrast, in this case, although I find elements (1) and (4) above to be the same as in Standard Havens, I find the showings regarding elements (2) and (3) above to be different from Standard Havens. The Secretary (the moving party) has shown only speculative possibility of harm — harm that has not been established to be irreparable— that could result from denying a stay, whereas the nonmoving parties (claimants with appeals that may be affected by Haas) have shown the potential for significant irreparable harm should a stay be granted.
I concede that, if the majority had shared my view that the Secretary’s motion should be denied, the possibility arises that the Court might never grant a similar *155 motion by the Secretary in the future, rendering the procedure we outlined in Ribaudo and Ramsey an empty exercise. However, several times above I observed that the Secretary has made broad, vague, specious, and wholly unsupported allegations in support of his motion. Should the Secretary present any concrete proof related to his assertions, I would be ready to revisit the balancing of harms. Providing proof of asserted justifications for a stay is more than just a mere formality. Until the Secretary does so, his arguments cannot be considered anything more than speculative, and I cannot agree with the majority’s decision that a stay of cases pending before VA that are affected by Haas is warranted at this time.[10]
I do agree that the Court cannot be oblivious to the effect of our decisions on the greater adjudication process. Nonetheless, we must consider the law above all else. VA’s claims backlog has been well documented. Clearly, the goal of VA is to adjudicate all backlogged claims. The effect of today’s decision is to suggest that it makes more sense to adjudicate some claims before others. It is, most likely, the most efficient result. However, the only matter for consideration now is whether the Secretary has made a showing that a stay is warranted using the four factors identified in Ribaudo, Ramsey, and Standard Havens. Based upon the case-law governing stays of judgment pending appeal, I do not believe the Secretary has made the necessary showing that such a stay is warranted in this case.

. I concur in part I of the Court’s order denying Mr. Ribaudo's motion to dismiss the Secretary’s motion for lack of jurisdiction, but I observe that, rather than carve out a onetime exception to the requirement that the motion to stay be filed "in the case the effect of which the party wishes to stay”, ante at 138-39, the Court could simply use its power over its own docket to recaption the Secretary's motion as if it had been filed in Haas v. Nicholson, No. 04-0491. See Am. Legion v. Nicholson, 20 Vet.App. 501 (2006) (en banc order) (dividing the joint petition filed by The American Legion and Mr. Ribaudo into two separate cases). I also concur in part III of the Court's order denying Mr. Ribaudo’s motion for the Court to issue an order that the Secretary show cause why he should not be held in contempt.

. I agree with the majority that whether or not the Secretary would be able to recoup any such benefits is an open question that would not be appropriate to decide today. Ante at 142, n. 1.

. See The American Legion, http://www. legion.org/; Preamble to the Constitution of The American Legion, http://www.legion.org/? section=our_legion & subsection =oLwho_we_are & content = oLwho_we_are.

. See http://www.dav. org/membership/documents/2006_annual_report.pdf, at 2.

.The nonmoving parties whose interests I consider are Mr. Ribaudo and other claimants similarly situated who have claims that would be stayed if the Court granted the Secretary's motion, such as those who filed affidavits in support of Mr. Ribaudo’s opposition to the Secretary's motion for a stay. To limit consideration solely to Mr. Ribaudo would turn a blind eye to the larger effect of granting a stay.

. I also agree with Judge Kasold’s assertion (post at 164 n. 21) that, by considering the Secretary’s claims of irreparable harm as part of the public interest, the majority is giving double effect to the Secretary’s claims. See Cuomo, 772 F.2d at 978 (summarily dismissing arguments made regarding the public interest "since they essentially rehearse petitioners’ arguments about the irreparable harm”). Regardless of under what heading the Court considers them, I find the Secretary’s arguments unconvincing.

. Additionally, other factors might affect whether a stay is warranted, such as the seriousness of the diseases involved, the number of claims affected, or the clarity of the law after a Court decision is rendered.