# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 06-2762

Nicholas Ribaudo,                                              Petitioner,

v.

R. James Nicholson,
Secretary of Veterans Affairs,                                 Respondent.

Before GREENE, *Chief Judge*, and KASOLD, HAGEL, MOORMAN,
LANCE, DAVIS, and SCHOELEN, *Judges.*

## O R D E R

The Court granted Mr. Ribaudo's petition for extraordinary relief in an opinion issued on January 9, 2007. *Ribaudo v. Nicholson*, 20 Vet.App. 552 (2007) (en banc), *appeal filed* (Fed. Cir. Apr. 2, 2007) [hereinafter *Ribaudo*]. Therein, the Court (1) held unlawful and ordered rescinded the Board of Veterans' Appeals (Board) Chairman's Memorandum 01-06-24; and (2) ordered that "[t]he Secretary will proceed to process the appeals that were stayed in accordance with that unlawful memorandum 'in regular order according to [their] place on the docket'" and will apply this Court's decision in *Haas v. Nicholson*, 20 Vet.App. 257 (2006), *appeal docketed*, No. 07-7037 (Fed. Cir. Nov. 8, 2006) to those appeals. *Ribaudo*, 20 Vet.App. at 561 (quoting 38 U.S.C. § 7107(a)(1)). The Court also outlined a procedure by which the Secretary could file a motion to stay the precedential effect of *Haas*. *Id.* at 560-61.

On January 16, 2007, the Secretary filed an opposed motion requesting that the Court (1) stay the precedential effect of *Haas* pending judicial resolution in *Haas*, (2) stay the adjudication of cases potentially affected by *Haas*, (3) rule expeditiously on the motion to stay, and (4) delay entering judgment in *Ribaudo* until the motion to stay has been ruled upon. On January 24, 2007, the petitioner filed a motion to dismiss the Secretary's motion on the basis that it must be filed not in this case, but in *Haas*. Separately, the petitioner also has filed an opposed motion for the Court to order the Secretary to show cause why he should not be held in contempt for violating our January 9, 2007, order granting the petition for extraordinary relief.

On January 26, 2007, the Court issued an order, staying until further order of the Court, adjudication before the Board and VA regional offices cases that are potentially affected by *Haas*. On January 31, 2007, the Court entered judgment and noted the entry of judgment did not affect the January 26, 2007, order.

# I. PROCEDURE AND JURISDICTION

Initially, the Court recognizes that the Secretary's motion to stay the precedential effect of *Haas* includes both a confession that he is unsure whether he has selected the appropriate procedural avenue for this motion and an invitation for the Court to construe his motion as appropriate to present the merits of his stay request. The petitioner, on the other hand, argues that Rule 8(a) of the Federal Rules of Appellate Procedure requires us to dismiss the Secretary's stay motion. *See* FED. R. APP. P. 8(a). In our decision in *Ribaudo*, we set forth, for the first time, the particular procedure to be used by a party seeking to stay the effect of one of our decisions. *See Ribaudo*, 20 Vet.App. at 560 ("[W]e will adopt the principle that underlies Rule 8(a) of the Federal Rules of Appellate Procedure and the adaptation of that rule by Federal Circuit Rule 8(a), namely 'that the immediately subordinate tribunal has jurisdiction to act on a motion for a stay' even in a case where a Notice of Appeal has been filed seeking review in the [U.S. Court of Appeals for the] Federal Circuit [(Federal Circuit)]." (quoting *In re Bailey*, 11 Vet.App. 348, 349 (1998) (Nebeker, J., dissenting))). We then concluded that, "if the Secretary or Board Chairman wishes to stay the effect of *Haas*, the Secretary must file with this Court, or the Federal Circuit, a motion to stay the effect of this Court's decision in that case." *Id.*

Because the procedures adopted in *Ribaudo* postdate our opinion in *Haas*, and because the parties deserve a swift resolution of the motion to stay, we will decide the motion in *Ribaudo* rather than foster unnecessary delay by dismissing the motion and requiring the Secretary to refile his motion in *Haas*. In the future, however, a party seeking to stay the effect of one of our decisions must file a motion to stay in the case the effect of which the party wishes to stay. Permitting a party to file a stay motion in a case other than the one to which the motion pertains is not in keeping with the general principles underlying Rule 8(a) of the Federal Rules of Appellate Procedure and could invite uncertainty and procedural chaos. Thus, although we will deny the petitioner's motion to dismiss the Secretary's motion in this case, we again stress that this is a one-time exception to our newly adopted procedure requiring that a motion to stay the precedential effect of a particular case be filed in that case.

Although one of our dissenting colleagues would hold that the Court has jurisdiction over the Secretary's stay motion only if it is filed under the *Haas* docket number, that view unduly limits the Court's jurisdictional breadth in this matter. While we agree that the Court would have jurisdiction to consider such a motion in *Haas*, it does not follow that *Haas* is the only case in which the stay motion may be heard. Constitutionally, the propriety of the stay is a live case or controversy between the Secretary and Mr. Ribaudo that relates to the relief requested by Mr. Ribaudo's petition. *See Ramsey v. Nicholson*, 20 Vet.App. 223, 224 (2006) (per curiam order) (dismissing petition as moot because petitioners had obtained relief sought, i.e., the Secretary rescinded Board's stay order and directed Board to resume adjudication of stayed claims); *Waterhouse v. Principi*, 3 Vet.App. 473, 475 (1992) (holding that parties before Court must "personally have suffered some actual or threatened injury as a result of the putative illegal conduct" (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982))); *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990) (adoption of Article III case-or-controversy jurisdictional

requirements). Statutorily as to subject matter, there is no dispute that our jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), extends to the relief requested by Mr. Ribaudo. *See Ramsey*, 20 Vet.App. 16, 21 (2006) (citing *In re Fee Agreement of Cox*, 10 Vet.App. 361, 371 (1997)). Statutorily as to forum, we clearly indicated in our decision granting Mr. Ribaudo's petition that we retain jurisdiction over the enforcement of our decisions even after we no longer have jurisdiction over the merits of a case because it has been appealed to the Federal Circuit. *Ribaudo*, 20 Vet.App. at 560; *see also Heckler v. Lopez*, 463 U.S. 1328 (1983) (Rehnquist, J., acting as Circuit Justice); *JWK Intern Corp. v. United States*, 49 Fed.Cl. 364, 370 (2001), *aff'd*, 279 F.3d 985 (Fed. Cir. 2002). Any panel opinion by this Court suggesting otherwise is hereby overruled. *See*, *e.g.*, *In re Bailey*, *supra* (holding that filing of appeal to Federal Circuit divests this Court of jurisdiction to consider motion to stay Court order pending appeal).

Accordingly, the Court holds that there is jurisdiction to decide the motion in the instant case. As detailed above, there are prudential concerns that would normally compel us to decline ruling on a stay motion outside the case whose precedential effect the motion seeks to stay. Nonetheless, under the unique circumstances presented–the need to resolve this motion promptly combined with the Court's not having yet adopted a Rule of Practice and Procedure to guide practitioners in filing such motions–we conclude that the normal prudential concerns are outweighed by the circumstances in this case. In addition and significantly, action on the stay motion here is being taking by a full-Court panel. *Cf. Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (noting that where there is an earlier three-judge panel opinion, in a subsequent case, a three-judge panel may not render a decision that conflicts materially with such earlier panel).

## II. THE SECRETARY'S REQUEST TO STAY

Turning to the merits of the Secretary's motion, in *Ribaudo* we stated:

> Whether such a motion [to stay the effect of a decision] is granted is entirely within this Court's discretion, and, in exercising that discretion, this Court will look to the following four criteria generally considered relevant in determining whether to stay the effect of a court decision pending appeal: (1) The likelihood of success on the merits of the moving party's appeal; (2) whether the moving party will suffer irreparable harm in the absence of a stay; (3) the impact on the non-moving party of that stay; and (4) the public interest. *See Ramsey*, 20 Vet.App. at 39 (citing *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990)). To be clear, the Court's grant of a stay of the effect of one of its decisions could include directing or authorizing the Secretary and Board Chairman to stay cases at the Board and at the agencies of original jurisdiction. *See Nat'l Org. of Veterans Advocates v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1380 (Fed. Cir. 2001) (directing VA "to stay all proceedings involving claims for [dependency and indemnity compensation] benefits under [38 U.S.C. §] 1318, whose outcome is dependent on the regulation in question, pending the conclusion of an expedited rulemaking").

20 Vet.App. at 560. As the moving party, the Secretary has the burden of demonstrating that the factors weigh in favor of granting his requested stay. The weighing of the factors is not a mathematical exercise. *See Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) ("Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules."); *Standard Havens Prods., Inc.,* 897 F.2d at 512 ("Each factor . . . need not be given equal weight."). Ultimately, whether a stay is appropriate depends on the totality of the circumstances. Therefore, the above framework should not be regarded as inflexible or exclusive. Also, whether the stay is granted or not rests entirely within our discretion. *Id.* To determine how to exercise that discretion, we now address the four factors under the circumstances presented in the instant motion.

Initially, the Court observes that the framework we borrow from Rule 8(a) of the Federal Rules of Appellate Procedure is not articulated so as to be directly applied to veterans benefits claims. The Court will first discuss in general terms how each factor pertains to appeals of veterans benefits claims. *See Standard Havens Prods., Inc.* and *Ribaudo*, both *supra*. Then we will discuss how each factor applies to this particular case.

A. Likelihood of Success on the Merits of the Appeal

The likelihood of success on the merits of the moving party's appeal is not a rigid concept. *Hilton*, 481 U.S. at 777. The determination of success does not depend on a showing of a mathematical probability of success, but rather on whether there is "substantial equity, and [a] need for judicial protection," such that "an order maintaining the status quo is appropriate." *Wash. Metro. Area Transit Comm'n*, 559 F.2d 841, 844 (D.C. Cir. 1977). To satisfy this requirement, the party seeking to maintain the status quo through a stay need only raise questions on the merits that are "so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2nd Cir. 1953).

The Court recognizes that "[w]henever decisions of one court are reviewed by another, a percentage of them are reversed." *Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring) (maintaining that "[w]e are not final because we are infallible, but we are infallible only because we are final"). To determine the likelihood that any ruling of law will survive appeal, the best objective test is the degree to which it is rooted in well-established law. Where the decision of a court takes only a small incremental step from established law or relies on a strong analogy to clear precedent, then there is reason to believe that reversal is unlikely. Conversely, delving into an area with little precedent increases the chances of a different ruling on appeal. Another objective factor to consider is the number of rulings involved in reaching the final conclusion. As the number of rulings increases, the likelihood that the final conclusion will be modified or reversed on appeal necessarily increases. Additionally, because the Federal Circuit's jurisdiction is limited to review of our interpretations of law and regulation, the focus is not on the specific facts of the case to be stayed. *See* 38 U.S.C. § 7292; *Forshey v. Principi*, 284 F.3d 1335, 1359 (Fed. Cir. 2002) (en banc); *Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991) (recognizing that the Federal Circuit's

review of our statutory and regulatory interpretation will be conducted de novo). Simply put, because the Federal Circuit can review only our legal determinations, its review will always be de novo.

The issue decided in *Haas* was one of first impression. Reaching a decision required the Court to interpret three layers of authority: A statute, its implementing regulation, and the relevant provisions of *VA Adjudication Procedure Manual M21-1*. *Haas*, 20 Vet.App. at 277. None of the layers of authority have been addressed extensively by prior caselaw. Therefore, based on the number and novelty of the issues in its decision subject to de novo review by the Federal Circuit, *Haas* presents several substantial, novel issues that may result in the Federal Circuit modifying or reversing our decision. *See Standard Havens Prods., Inc.*, 897 F.2d at 516 (granting stay pending resolution of appeal in part based upon the appellant's showing of a "substantial legal question"). Indeed, these circumstances present fair ground for litigation and thus produce a good reason for maintaining the status quo pending further deliberate review. *See id.* at 513-14; *see also Alaska Cent. Express*, *Inc. v. United States*, 51 Fed.Cl. 227 (2001) (if equities weigh heavily in favor of maintaining status quo, court may grant injunction where question raised is novel or close); *Golden Eagle Ref. Co. v. United States*, 4 Cl.Ct. 622 (1984) (same). Thus, the Court in its discretion holds that the Secretary has met his burden of demonstrating that the first factor weighs in his favor.

## B. Irreparable Harm

On the second factor, "whether the moving party will suffer irreparable harm in the absence of a stay," the potential Board decisions before the Court deal primarily with paying disability compensation and providing other VA benefits. Therefore, it is difficult to discern whether the Secretary will ever suffer "irreparable" harm from being denied a stay of a decision of this Court. *See* 38 U.S.C. §§ 301(b), 7261; *Tobler v. Derwinski*, 2 Vet.App. 8, 11-12 (1991). The Court must consider, however, the generally overburdened VA system and any additional burdens imposed on this complex system by requiring the Secretary to adjudicate cases affected by *Haas* while that decision is still on appeal. First, although the Secretary has the power to rescind or discontinue awarded benefits and, under certain circumstances, to recover money already disbursed, *see* 38 U.S.C. §§ 5302, 5314, 5112(b)(6), the time spent on making these decisions, and then revoking benefits awarded and initiating recovery of payments, can never be reclaimed by the Secretary if a legal interpretation by this Court is later reversed.[1] *Cf. Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3rd Cir. 2000) ("The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages.").

Second, occasionally a decision of this Court may invalidate the procedures used by the Secretary in a manner that would require a serious restructuring of the VA workforce. *See, e.g., Colvin v. Derwinski*, 1 Vet.App. 171 (1991) (holding that Board panels may consider only

---

[1] The Court expresses no opinion in this decision as to whether the Secretary would in fact be able to recoup any benefits awarded pursuant to *Haas*, if *Haas* is reversed.

independent medical evidence to support their findings, resulting in VA altering its long-standing practice of including members of the Board with medical expertise on each panel and relying on their medical opinion in rendering Board decisions). For a case on appeal to the Federal Circuit, it may be prudent to stay the precedential effect of our opinion in that case to avoid a time-consuming, traumatic, and potentially unnecessary reorganization of adjudication personnel.

Third, to the extent our rulings affect the Secretary's dealings with groups beyond his control (such as independent entities that provide specific services to veterans, or private parties that might possess relevant records), the Court should consider the potential for unnecessarily straining the limited resources of these organizations. Time spent on these appeals, if they need to be readjudicated following the Federal Circuit's decision in *Haas*, is critical time that cannot be recouped by these supporting organizations. Rather, denying the Secretary's motion for a stay would result in consuming and expending even more time and resources in a system where time is very much of the essence for each claimant, not just those individuals potentially affected by our decision in *Haas*. Hence, the Court cannot be completely insensitive to the potential for administrative disruption that exists when it denies a stay motion. Of course, a Court decision may affect the Secretary in other ways and we have no doubt that he will be motivated to fully inform us of the potential effects of denying a stay in any given case so that we can weigh the potential effect as appropriate. In sum, we conclude that a denial of a stay would result in some harm to the Secretary by the likely creation of administrative disruption in an already generally overburdened system.

## C. Impact on Nonmoving Party

The impact on the nonmoving party before VA, which here includes Mr. Ribaudo, must be judged by the group that is defined by the law being interpreted. Although the legal questions involved in resolving a petition for extraordinary relief may require examining a petitioner's individual circumstances, *see Erspamer v. Derwinski*, 1 Vet.App. 3, 10-11 (1991), the legal question of whether a stay is appropriate is a different and broader inquiry. It is not a challenge to opponents of the stay to select the most critically ill and sympathetic claimants seeking the particular type of benefit at issue. Thus, the Court should examine whether the class of benefits involved necessarily corresponds to a class of claimant whose needs are unique or particularly time sensitive.

In this case, the group of third-party claimants affected by the stay are those who have conditions presumptively related to exposure to Agent Orange who would not be entitled to that presumption if *Haas* were to be reversed or significantly modified. The list of such conditions includes not only common conditions such as type II diabetes, but also numerous forms of cancer and other critical conditions. 38 C.F.R. § 3.309(e) (2006). Because veterans' claims die with them, some claimants affected by staying *Haas* would qualify as having especially time-sensitive claims. *See Landicho v. Brown*, 7 Vet.App. 42, 47 (1994). Therefore, the delay suffered by these claimants is consequential and must be afforded weight in the consideration of the stay factors.

6

## D. Public Interest

Considering the fourth factor, the members of the public that are particularly interested in the outcome of the type of stay motions presented here are the millions of current and potential veterans benefits claimants.  The primary effect of not granting a stay is incursion of the risk that processing claims while the lead case is on appeal will result in a waste of resources that further burdens the veterans benefits system.  In exercising our authority under the All Writs Act, 28 U.S.C. § 1651(a), to insure that the Board adjudicates claims in a timely manner, we only exercise such power where "the delay amounts to an arbitrary refusal to act, and [is] not the product of a burdened system." *Costanza v. West*, 12 Vet.App. 133, 134 (1999) (per curiam order).  Thus, this group has no effective remedy from the Court if denying a stay results in a further burden on VA's adjudication system.  Moreover, the Court notes that our obligation to consider the effect of our rulings on the system exists throughout our jurisprudence.  *See, e.g.*, *Mason v. Nicholson*, 20 Vet.App. 279, 289 (2006) (refusing to order a remand that would be "a superfluous exercise adding to an already overburdened system").  Accordingly, the more limited the resources that may be consumed by VA's adjudication of a large number of claims that may later have to be readjudicated after a judicial decision, the more caution the Court should exercise in refusing the Secretary permission to stay those cases.

There can be extensive delay in obtaining a final appellate decision.  The veterans benefits system is unusual, if not unique, in the degree of administrative claims adjudication and judicial review of those adjudications.  In addition to the multiple layers of VA decision review, veterans have two separate layers of appeal of right to independent judicial review.  Beyond the plenary appellate review of this Court, 38 U.S.C. § 7261, the appellant has a second appeal of right to the Federal Circuit and then can seek further review by the U.S. Supreme Court.  38 U.S.C. § 7292.  However, because of the limited nature of the Federal Circuit's review of our decisions, there is no guarantee that the appeal of the stayed decision will result in a definitive resolution of the Secretary's dispute with our legal interpretation.  The Federal Circuit may vacate and remand one portion of our decision for further proceedings without comment on the whole.  *See, e.g.*, *Mayfield v. Nicholson*, 444 F.3d 1328 (Fed. Cir. 2006).  This can lead to one of the Court's decisions being appealed to the Federal Circuit multiple times over many years before an issue is resolved.  Moreover, because the Federal Circuit's jurisdiction extends to arguments "in which the [Court's] decision . . . regarding a governing rule of law would have been altered by adopting the position being urged . . . even though the issue underlying the stated position was not 'relied on' by the . . . Court," it is quite possible that the Federal Circuit will not address any of the interpretations by this Court challenged by the Secretary in his appeal.  *Morgan v. Principi*, 327 F.3d 1357, 1363 (Fed. Cir. 2003).  Because it is possible that an interpretation of law by this Court may be the subject of litigation for years, denying a stay of one of our decisions may result in the need to readjudicate hundreds, if not thousands, of claims by the time the correctness of the ruling is finally addressed by the Federal Circuit or the U.S. Supreme Court.  There is no question that the readjudication of such a number of cases and any subsequent effort to recover benefits paid pursuant to them would result in a significant burden on a system that is already handling close to a million new claims for benefits each year.

It is not disputed that the Court's ruling in *Haas* could possibly extend the presumption of herbicide exposure to 832,000 veterans not previously entitled to the presumption. Secretary's Motion at 10. This number is almost the total number of compensation claims filed last year. *Id*. Undoubtedly, it affects more than 1,500 claims currently pending at the Board.[2] Accordingly, even if only a modest percentage of those veterans affected by *Haas* filed claims based on that decision, the number of existing and potential claims is significant and could result in a substantial burden on the system, in terms of development, adjudication, and readjudication if such claims had to be readjudicated some months or years in the future. Hence, if *Haas* were to be modified or reversed, the consequences would certainly be felt not just by those whose benefits were discontinued but by millions of veterans and dependants who must contend with the delays caused by the limited resources available to the Secretary.

### E. Totality of the Circumstances

Examining the circumstances surrounding these four factors as a whole, we find that the Secretary has met his burden of demonstrating that the effect of our decision in *Haas* should be stayed. Although the second and third factors weigh, at least to some degree, against granting the motion, the first and fourth factors together outweigh the other factors under the facts of this case. The Court recognizes the disadvantage that may be experienced by claimants whose benefits could be awarded now by denying the Secretary's stay motion and ordering him to adjudicate those claims and apply *Haas*. However, in a world of limited resources and uncertainty in the appeals process, the Court must accept its role in balancing competing interests where it is not always possible to process some veterans' claims without prejudicing the interests of other veterans. Therefore, our temporary stay issued on January 26, 2007, will be dissolved and the Secretary's motion will be granted in part.

In light of the critical nature of some of the disabilities involved, and the fact that some claimants may not survive the duration of this stay, the Court qualifies the stay in that it does not affect *in any way* the Secretary's ability to advance cases on the docket of the Board based on the compelling facts of an individual case. 38 U.S.C. § 7107(a)(2); 38 C.F.R. § 20.900(c) (noting that a case may be advanced on the Board's docket if "the appellant *is seriously ill or is under severe financial hardship, or if other sufficient cause is shown*" (emphasis added)). Individual claimants may still apply to the Board to have their cases advanced, as an exception to the stay granted by the Court. In ruling on any motions for advancement on the docket, the Secretary will, of course, act expeditiously, and if the Secretary does advance such cases, they will no longer be subject to the stay granted in this order. In adjudicating those cases, the Secretary must apply our opinion in *Haas*. This statutory right ensures, as recognized by our dissenting colleague, that "the adjudication of the most serious cases (such as those involving veterans with serious health or financial issues) can be expedited," *post* at __, slip op. at 15-16, and such right, therefore, addresses the concern as to the

---

[2] During oral argument on December 6, 2006, when asked how many cases were being stayed pending the appeal of *Haas*, the Secretary's representative reported that more than 1,500 appeals were being stayed pursuant to Board Chairman's Memorandum 01-06-24.

potential irreparable harm to those nonmoving third-party claimants who are similarly situated to Mr. Ribaudo with appeals pending before the Board and who may have serious, life-threatening conditions. Moreover, the Secretary's authority to order equitable relief in appropriate cases is also unaffected and, therefore, provides yet another alternative remedy. *See Erspamer*, 9 Vet.App. at 511-12 (Court's authority does not extend to reviewing Secretary's exercise of his equitable powers). As a final matter, the stay does not apply to cases where the Court has already issued a decision ordering VA to apply *Haas* and the Secretary did not appeal that decision to the Federal Circuit. *See Winslow v. Brown,* 8 Vet.App. 469, 472 (1996) ("A lower tribunal, 'upon receiving the mandate of an appellate court, may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate'") (quoting *Piambino v. Bailey,* 757 F.2d 1112, 1119-20 (11th Cir. 1985)); *Moore v. Derwinski*, 2 Vet.App. 67, 68 (1992) (ordering the Secretary to show cause why he should not be held in contempt for failure to comply with the mandate of the Court).

### III.  THE PETITIONER'S CONTEMPT MOTIONS

The petitioner has filed a motion for an order that the Secretary show cause why he should not be held in contempt. *See* 38 U.S.C. § 7265 (explicitly granting the Court power to enforce its lawful orders through enumerated contempt powers). The Court has recognized that "'[b]ecause of their very potency, [contempt] powers must be exercised with restraint and discretion.'" *Jones v. Derwinski*, 1 Vet.App. 596, 607 (1991) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). Hence, "a court considering sanctions . . . must take care to determine that the conduct at issue actually abused the judicial process." *Jones*, 1 Vet.App. at 607.

As a result of its holdings in *Ribaudo*, the Court issued two orders: (1) the Secretary was ordered to rescind Board Chairman's Memorandum 01-06-24, and (2) the Secretary "will decide Mr. Ribaudo's appeal in regular order according to its place upon the docket and will apply this Court's decision in *Haas*." *Ribaudo*, 20 Vet.App. at 561 (internal citations omitted). Concerning our first order, at the present time, there is no evidence to suggest that Board Chairman's Memorandum 01-06-24 has not been rescinded. Regarding our second order, because we subsequently granted the Secretary a preliminary stay as to that order, he cannot be in contempt of Court as to that particular order.

In support of the contempt motion, the petitioner attaches what he asserts are two electronic mail messages from the Secretary's Chief Counsel for Policy to the Board and its supporting staff ordering the Board not to process cases that had been stayed pursuant to the Chairman's Memorandum that was invalidated by our January 9, 2007, order granting Mr. Ribaudo's petition. These messages appear to have been during the two days immediately following our January 9, 2007 order. Their preliminary condition is clear. *See* Show Cause Motion, Exhibit A at 1 ("We are consulting with the General Counsel's Office regarding what actions will be taken in light of this significant decision . . . . Further information and guidance will be provided shortly."); Show Cause Motion, Exhibit B at 1-2 ("In the meantime, we at the Board continue to sit tight today and tomorrow while the Court and litigation process works itself out. This action is in no way intended to be

disrespectful as to the lawful orders of the Court, but rather is intended to follow the specific process for obtaining a stay set forth by the Court in *Ribaudo*."). Rather than demonstrate contempt for the Court, these preliminary internal VA communications reflect an ongoing effort by the Secretary to comply with our opinion in *Ribaudo*.

Moreover, as noted above, we subsequently granted the Secretary a preliminary stay with respect to the second holding in *Ribaudo*, and, with respect to the first holding in *Ribaudo*, we have nothing before us to suggest that Board Chairman's Memorandum 01-06-24 has not been rescinded. Although we would be concerned if our orders were not complied with, in the end, the petitioner has done a disservice to the Court by filing a contempt motion so quickly, particularly when, as is the case here, it is clear that the Secretary is engaged in an ongoing effort to comply with our decision in *Ribaudo*. Accordingly, even assuming the authenticity of the alleged internal VA electronic mail messages, there is no merit in the petitioner's request for a show cause order.

Upon consideration of the foregoing, it is

ORDERED that the petitioner's motion to dismiss the Secretary's stay motion is denied. It is further

ORDERED that the January 26, 2007, temporary stay is dissolved. The Secretary's January 16, 2007, motion to stay is granted in part. The adjudication of cases before the Board and VA regional offices that are potentially affected by *Haas* is stayed until mandate issues in the pending appeal of *Haas* to the Federal Circuit. The Secretary, however, may, upon the motion of an appellant, advance for consideration and determination compelling cases on the Board's docket as of the date of this order, *see* 38 U.S.C. § 7107(a)(2), to which our decision in *Haas* will apply. Moreover, the Secretary's authority to order equitable relief in appropriate cases is also unaffected. It is further

ORDERED that the Secretary, upon issuance of mandate by the Federal Circuit in *Haas*, will proceed to process the claims that were stayed pursuant to this order, unless ordered otherwise. It is further

ORDERED that the petitioner's motion for an order that the Secretary show cause why he should not be held in contempt is denied.

DATED: April 13, 2007                                    PER CURIAM.


HAGEL, *Judge*, concurring: I concur in the majority's decision in part because the majority makes it clear that its decision to entertain in Mr. Ribaudo's case a motion that stays the effect of our judgment in another case is limited to this one instance. The proper procedure would have been for the Secretary to have filed an appropriate motion in *Haas*, and I would have required the Secretary

10

to follow that procedure. Indeed, the Secretary's confusion[3] regarding the proper procedure for seeking a stay in cases that would apply *Haas* is mystifying in light of this Court's clear statement in *Ribaudo*, that we "adopt the principle that underlies Rule 8(a) of the Federal Rules of Appellate Procedure and the adaptation of that rule by Federal Circuit Rule 8(a), namely 'that the immediately subordinate tribunal has jurisdiction to act on a motion for a stay' even in a case where a Notice of Appeal has been filed seeking review in the Federal Circuit." *Ribaudo v. Nicholson*, 20 Vet.App. 552, 560 (2007) (en banc). I do not interpret Rule 8(a)–and have found no authority that does–as allowing a party to file a motion to stay the effect of a judgment in any case other than the one whose judgment is sought to be stayed. Here, the case contemplated by Rule 8(a) of the Federal Rules of Appellate Procedure and the Federal Circuit's Rules is clearly *Haas*. If the Secretary truly believed that this Court did not have jurisdiction to issue a stay in *Haas*, then the proper course of action would have been for him to have filed in the Federal Circuit his motion to stay the effect of our judgment in that case and its application to other cases. Rule 8(a) clearly provides that avenue. *See* FED. R. APP. P. 8(a)(2) (providing that, if sufficient reasons are given, a motion to stay the judgment or order of a district court may be made in the court of appeals). Nevertheless, I accept the Court's decision to employ a one-time exception to the general rule in order to decide expeditiously a matter of great importance.

Turning to the merits of the motion to stay, I believe that this decision is a difficult one. And, although my dissenting colleagues raise compelling points, three factors in particular lead me to concur in the majority's decision to grant the motion. The first is the nature of the question presented in *Haas*–it is a case of first impression affecting, in a uniform manner, the adjudication of claims and potential claims of a large class of veterans. Further, the Court's decision in *Haas* is purely an exercise in statutory construction and the application of principles of administrative law. Although as a member of the *Haas* panel I have every confidence that the opinion is correct, I recognize that the Court's resolution of this question of first impression is based on our resolution of pure questions of law about which our reviewing court–the Federal Circuit–has substantial expertise and which it must review de novo–with no deference to our reasoning and conclusions.

Second, given the prompt attention paid by the Federal Circuit to its docket, the adverse impact of the stay on the affected claimants will be for a relatively brief period of time.

Finally, I am persuaded to join in the majority's decision primarily because the majority has wisely left open an avenue for compelling cases to be advanced on the docket of the Board, thus alleviating the possibility of an unduly harsh impact on claimants who are under severe hardship. This important exception to the broad stay sought by the Secretary addresses the concerns raised by Mr. Ribaudo regarding the detrimental impact that a stay would have on individual claimants with compelling circumstances. The stay granted by the Court is narrowly tailored so as not to harm that special class of claimants.

---

[3] *See* Secretary's January 16, 2007, Motion to Stay at n.1 ("[I]n an abundance of caution, to avoid a dismissal for lack of jurisdiction, the Secretary respectfully requests that the Court use the instant case . . . as the proper vehicle for staying the precedential effect of *Haas*.").

11

SCHOELEN, *Judge*, concurring in part and dissenting in part: I respectfully dissent from part II of the Court's order because I believe the Secretary has not met his burden of establishing that a stay of the precedential effect of the Court's decision in *Haas v. Nicholson*, 20 Vet.App. 257 (2006), *appeal docketed*, No. 2007-7037 (Fed. Cir. Nov. 8, 2006), or that a stay of cases related to *Haas* pending before VA is warranted.[4] I do not believe that the Court has properly applied the four-factor test from *Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 897 F.2d 511 (Fed. Cir. 1990), which we decided to follow in both *Ribaudo v. Nicholson*, 20 Vet.App. 552, 560 (2007) (en banc), *appeal filed* (Fed. Cir. Apr. 2, 2007), and *Ramsey v. Nicholson*, 20 Vet.App. 16, 38-39 (2006), when considering the appropriateness of a stay pending appeal. The four-factor analysis is best described as a "sliding scale," because the factors are not given equal weight, the moving party need not satisfy all the factors, and a strong showing as to one of the four elements may overcome a weaker showing as to the other three (or vice versa). *See Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 388 (7th Cir. 1984) (observing that courts have taken a "sliding scale" approach to the determination of whether a stay is appropriate).

The application of *Standard Havens* is best understood by studying the treatment other courts have given to the first factor of the test. If a movant establishes a strong likelihood of success on the merits, courts will grant a stay unless the nonmoving party would otherwise be severely prejudiced. Conversely, if a movant is unlikely to succeed on the merits, courts will grant a stay only if the moving party would otherwise be severely prejudiced. However, in cases where the likelihood of success is not clear, that is, where the moving party has only identified a substantial legal question, to grant a stay, courts will require the moving party to show that the remaining factors (balance of harms and the public interest) weigh in its favor. *See Standard Havens*, 897 F.2d at 513 (stating that a stay will be granted "'[w]here [movant] establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a *substantial case* on the merits,' *provided* the other factors militate in movant's favor" (quoting *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987))); *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278-79 (Fed. Cir. 1987) (granting motion to stay upon a movant's establishing both that there were substantial legal issues and that the balance of harms and the public interest weighed in its favor); *Cuomo v. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) ("Probability of success is inversely proportional to the degree of irreparable injury evidenced. A stay may be granted with either a high probability of success and some injury, or *vice versa*."); *Roland Mach.*, 749 F.2d at 387 ("The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor."); *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) ("The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors.").

---

[4] I concur in part I of the Court's order denying Mr. Ribaudo's motion to dismiss the Secretary's motion for lack of jurisdiction, but I observe that, rather than carve out a one-time exception to the requirement that the motion to stay be filed "in the case the effect of which the party wishes to stay", *ante* at __, slip op. at 2-3, the Court could simply use its power over its own docket to recaption the Secretary's motion as if it had been filed in *Haas v. Nicholson*, No. 04-0491. *See Am. Legion v. Nicholson*, 20 Vet.App. 501 (2006) (en banc order) (dividing the joint petition filed by The American Legion and Mr. Ribaudo into two separate cases). I also concur in part III of the Court's order denying Mr. Ribaudo's motion for the Court to issue an order that the Secretary show cause why he should not be held in contempt.

## I. Likelihood of Success on the Merits of the Appeal

We can do little more than speculate as to how the Federal Circuit will resolve the appeal of our decision in *Haas*. That said, I agree with the majority's observation that a number of rulings in *Haas* were issues of first impression in this Court. *Ante* at __, slip op. at 5. Thus, I generally agree with the majority that the Secretary has presented a substantial legal question for the Federal Circuit to address in *Haas*.

However, I disagree with the majority regarding the effect of finding that there is a "substantial legal question" raised by the Secretary. The majority states that this finding ***favors*** granting the Secretary's motion for a stay. *See ante* at __, __, slip op. at 5, 8 (observing that the first factor favors the Secretary). I disagree. The cases cited above clearly stand for the proposition that merely presenting a substantial legal question (as opposed to showing a strong likelihood of success) weighs neither in favor of, nor against, granting a stay. Rather, such a finding essentially renders this factor neutral so that the Secretary must prove that the balance of harms and the public interest favor granting a stay. *See Standard Havens*, 897 F.2d at 513 (stating that a stay will be granted where the movant demonstrates a substantial case on the merits, "*provided* the other factors militate in movant's favor"); *see also E.I. DuPont de Nemours*, 835 F.2d at 278-79 (granting a motion for a stay "[i]n view of the substantial legal issues presented on appeal, the harm to [the moving party], the harm to the public, and the comparative lack of harm to [the non-moving party]"). Thus, I would require that the Secretary establish that the balance of the remaining factors militate in favor of a stay. *See Standard Havens*, *E.I. DuPont de Nemours*, *Cuomo*, *Roland Mach.*, and *Wash. Metro. Area Transit*, all *supra*.

## II. Irreparable Harm

I agree with the majority's conclusion that the risk of irreparable harm to the Secretary (or absence thereof) weighs against granting the Secretary's motion for a stay. In short, I do not believe that the Secretary's expenditure of resources constitutes irreparable harm. VA's resources are limited only by congressional appropriations. *See* U.S. CONST. art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . . . ."). Nothing prohibits VA from seeking and obtaining additional appropriations from Congress in the event that a flood of claims is received in the wake of our decision in *Haas*. I fully acknowledge that the Treasury is not a limitless source of funds. Nonetheless, if veterans and their survivors are motivated to file claims after our decision in *Haas*, VA will still be required to develop each and every one of these claims regardless of how *Haas* is ultimately decided and regardless of whether the Court stays adjudication of these claims pending *Haas*. That is, many of the resources the Secretary claims would be expended wastefully should *Haas* be overturned on appeal would eventually be consumed by the development of these claims, ***regardless of when or how they are decided***. Moreover, even if the Secretary prevails in *Haas*, the Secretary will be obligated to consider these claims under other theories, such as direct service connection. *See Schroeder v. West*, 212 F.3d 1265, 1271 (Fed. Cir. 2000) (stating that the duty to assist "attaches to the investigation of *all* possible in-service causes of that current disability, including those unknown to the veteran"). The only additional costs that

could be expended wastefully are the costs of rendering revised decisions and the costs of recouping any benefits granted, assuming *Haas* is reversed.[5] I recognize these costs are likely not de minimis, but the Secretary has completely failed to establish that they are substantial or irreparable. *See* BLACK'S LAW DICTIONARY 801 (8th ed. 2004) (defining "irreparable injury" as injury "that cannot be adequately measured or compensated by money"); *cf. Standard Havens*, 897 F.2d at 515 (finding irreparable injury where a party, *through affidavits*, established that, in the absence of a stay, a company is likely to suffer layoffs, *immediate* insolvency, and possibly extinction); *UST v. United States*, 831 F.2d 1028, 1032 (Fed. Cir. 1987) (finding that expenses and efforts expended in the defense of litigation do not constitute "irreparable injury"); *Cuomo*, 772 F.2d at 976-77 (declining to find irreparable harm based upon mere unproven speculation).

The issues considered in the majority's order in the two paragraphs beginning with "Second" and "Third" in part II.B were not raised by the Secretary in his motion for a stay. It is the Secretary who bears the burden of establishing that a stay is warranted. Because these issues were not raised by the Secretary in his motion for a stay and because Mr. Ribaudo has not had the opportunity to address them, I believe that they are not appropriate issues for the Court to consider.

Furthermore, I cannot agree with the majority's consideration of how today's decision will affect veterans service organizations and parties possessing records relevant to any claim affected by *Haas*. As to the interests of veterans service organizations, I note that The American Legion brought its own petition, identical to Mr. Ribaudo's, on behalf of its members. *See Am. Legion v. Nicholson*, 21 Vet.App. 1 (2007) (dismissing The American Legion's petition, identical to Mr. Ribaudo's, for lack of standing), *appeal filed* (Fed. Cir. Mar. 29, 2007). The American Legion's Web site bills The American Legion as the nation's largest veterans service organization and claims nearly 3,000,000 members.[6] Furthermore, in *Ramsey*, *supra*, the petitioner was represented by attorneys employed by the Disabled American Veterans (DAV), which has, according to its annual report, nearly 1,400,000 members.[7] Although this Court sought briefs from amici curiae, *American Legion v. Nicholson*, 20 Vet.App. 481 (2006) (en banc order), no veterans organization or individual entered an appearance as amicus supporting the Secretary. In fact, The American Legion (the only amicus appearing in this case) supported Mr. Ribaudo's petition. *Ribaudo*, 20 Vet.App. at 555. To suggest that not granting the Secretary's motion for a stay would adversely affect these organizations presumes that they are acting against the interests of their members. I do not agree with such a presumption. Finally, as emphasized above, assistance in the development of claims conducted by these organizations as well as resources expended by any other party possessing relevant records

---

[5] I agree with the majority that whether or not the Secretary would be able to recoup any such benefits is an open question that would not be appropriate to decide today. *Ante* at __, slip op. at 5 n.1.

[6] *See* The American Legion, http://www.legion.org/; Preamble to the Constitution of The American Legion, http://www.legion.org/?section=our_legion&subsection=ol_who_we_are&content=ol_who_we_are.

[7] *See* http://www.dav.org/membership/documents/2006_annual_report.pdf, at 2.

*must* occur regardless of the result in *Haas* and regardless of when any claims affected by *Haas* are adjudicated.

In conclusion, I believe the Secretary has not shown that he would be irreparably harmed should the Court not grant the stay and, accordingly, this factor weighs against granting the Secretary's motion for a stay.

### III. Impact on Nonmoving Parties

I also agree with the majority that the potential for harm to the nonmoving parties weighs against granting the Secretary's motion.[8]  Nevertheless, I wish to emphasize the seriousness of the diseases listed in 38 C.F.R. § 3.309(e) that the Secretary has determined to be associated with Agent Orange exposure.  Here is the entire list:

> Chloracne or other acneform disease consistent with chloracne
> Type 2 diabetes (also known as Type II diabetes mellitus or adult-onset diabetes)
> ***Hodgkin's disease***
> ***Chronic lymphocytic leukemia***
> ***Multiple myeloma***
> ***Non-Hodgkin's lymphoma***
> Acute and subacute peripheral neuropathy
> Porphyria cutanea tarda
> ***Prostate cancer***
> ***Respiratory cancers*** (cancer of the lung, bronchus, larynx, or trachea)
> ***Soft-tissue sarcoma*** (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma,
>     or mesothelioma)

38 C.F.R. § 3.309(e) (2006) (emphasis added).  The majority of these conditions are cancers that can be life threatening.  In *Ramsey*, when we confronted this issue the first time, the claims were related to tinnitus, a disease of the ear that could not be reasonably considered life threatening.  But, in this case, the serious, life-threatening nature of the conditions that have been linked to Agent Orange exposure cannot be overstated.  That veterans suffering from these life-threatening conditions could die while the Secretary's appeal of *Haas* is pending is a factor I believe merits greater weight than the majority has assigned to it.  *See ante* at __, slip op. at 6.

Additionally, I find wholly unpersuasive the assertion made by the Secretary that Mr. Ribaudo (and other similarly situated claimants) would be made whole should *Haas* be affirmed on appeal.  The Secretary disregards the obvious reality that, should no stay be granted, such claimants

---

[8] The nonmoving parties whose interests I consider are Mr. Ribaudo and other claimants similarly situated who have claims that would be stayed if the Court granted the Secretary's motion, such as those who filed affidavits in support of Mr. Ribaudo's opposition to the Secretary's motion for a stay.  To limit consideration solely to Mr. Ribaudo would turn a blind eye to the larger effect of granting a stay.

would have money in hand sooner. Given that VA does not pay interest on retroactive awards of benefits, *see Sandstrom v. Principi*, 358 F.3d 1376 (Fed. Cir. 2004), delaying the payment of benefits would not render such claimants whole monetarily because the failure to provide benefits immediately would have substantial repercussions. *See, e.g., Marcus v. Sullivan*, 926 F.2d 604, 614 (7th Cir. 1991) ("The Secretary argues that claimants who are eventually successful in the administrative process can obtain full benefits, though only retroactively. A delayed receipt of disability benefits, however, cannot suffice to make the claimant whole. Any delay potentially subjects claimants to deteriorating health, and even death. Claimants need to receive funds promptly because they use their benefits to purchase the very necessities of life." (citations omitted)). Ultimately, however, the risk that veterans may die without their claims having been developed is far more compelling in my weighing of harms. Any accrued-benefits claims based on those veterans' entitlements will be adversely affected because accrued benefits may only be awarded based on evidence before VA at the time of a veteran's death. *See* 38 U.S.C. § 5121. The very real risk of irreparable harm to veterans with claims affected by *Haas* weighs strongly against granting the Secretary's stay motion.

## IV. Public Interest

When considering where the interest of the public lies in this matter, I find this case similar to *Standard Havens*, where the Federal Circuit observed that the parties' arguments "essentially negate one another" and that "the fourth factor favors neither party." *Standard Havens*, 897 F.2d at 516. On one hand, the Secretary plays the role of the guardian of the public fisc. On the other hand, Mr. Ribaudo appeals to the general patriotic notion that Congress chose to give special consideration to those who put their lives on the line during a time of war in service to our country. Although the public has an interest in compensating veterans for their sacrifices for our country, the public has no interest in awarding compensation to those who are not legally entitled to it. Nevertheless, the people's representatives have made clear that timely adjudications should be the goal of VA. *See, e.g.,* 140 Cong. Rec. S4758 (1994) (statement of Sen. Rockefeller) (stating that "if the reality is that it takes months or years to resolve a claim, the individual claimant is not being afforded proper treatment. To force a veteran to wait for more than 2 years for a [Board] decision – after he or she has already waited over 200 days for a regional office decision on the original claim – is unconscionable."). It is true that, without granting a stay, some other veterans may have to wait longer for the adjudication of their claims. However, the adjudication of the most serious cases (such as those involving veterans with serious health or financial issues) can be expedited. *See* 38 U.S.C. § 7107(a)(2)(B). There is simply no way for the Court to find that these contradictory interests favor one party or the other. The competing public interests cited by each party are equally compelling.

As to the majority's consideration of the public interest, I dispute the assertion that not granting a stay would put a burden on the adjudication system. Surely granting the stay would, albeit temporarily, *relieve* some of the burdens on the adjudication system. However, the Secretary has not established the degree to which granting the stay would relieve the burden. As I have made clear above, whether these *Haas*-related claims are adjudicated now or at some point in the future, they

must be developed and adjudicated in accordance with law. *See, e.g.,* 38 U.S.C. §§ 5103, 5103A. Although the Secretary and the majority suggest that the adjudication of non-*Haas*-related claims would be delayed by the adjudication of *Haas*-related claims, that is not necessarily the case. Denying the Secretary's motion merely preserves the status quo, where decisions will be issued in the ordinary course of business and, generally, in the order in which the claims were received. *See* 38 U.S.C. § 7107. Requiring the Secretary simply to adjudicate claims in the ordinary course of business would not "add[] to an already overburdened system." *Mason v. Nicholson*, 20 Vet.App. 279, 289 (2006). Surely, if the Secretary's motion for a stay is denied, the Secretary will adjudicate some *Haas*-related claims and may have to expend additional resources readjudicating such claims if *Haas* is reversed on appeal.[9] However, many of the claims filed after *Haas* issued are unlikely to be developed and adjudicated before the *Haas* appeal is resolved.

In addition, denying the Secretary's motion would not require the immediate adjudication of all *Haas*-related claims. Surely some indeterminate number of veterans who have claims that have nothing to do with *Haas* would have the adjudication of their claims delayed for an indeterminate period of time. But it is not as if the Secretary must set all other claims aside in order to decide those related to *Haas*. Finally, that the number of veterans and the amount of time is indeterminable further illustrates the Secretary's failure to produce an adequate argument, that is, one supported by more than vague, unsubstantiated assertions, in support of his motion.

The Secretary has asserted: "Based on information provided by the Defense Manpower Data Center, the *Haas* decision could extend the presumption of exposure to herbicide to as many as approximately 832,000 veterans not previously covered." Secretary's Motion at 10. Although the majority characterizes this assertion as "not disputed" (*ante* at __, slip op. at 8), I find the Secretary's assertion that *Haas* could affect 832,000 veterans to be specious at best. First, such an unsubstantiated and unsupported statement in a pleading is not evidence. The Secretary cites no authority to support his assertion that 832,000 veterans may be affected by *Haas*. The Secretary provides no affidavits (which, unlike briefs, must contain oaths or affirmations as to the accuracy of their content) in support of his motion. He simply presents a bald, unsubstantiated statement in a pleading. *See* U.S. VET. APP. R. 21(a) (stating that petitioners for extraordinary relief must, among other things, "include an appendix containing copies of any order or decision or any other documents necessary to understand and support the petition"), 27(a) (observing that motions may be "supported by briefs, affidavits, or other papers"), 28(a) (stating that briefs must contain, among other things, "an argument . . . with citations to the authorities and parts of the record on appeal relied on"). Thus, even if Mr. Ribaudo does not object to the number provided by the Secretary, the accuracy of the Secretary's assertion has not been established.

---

[9] I also agree with Judge Kasold's assertion (*post* at __ n.21, slip op. at 28 n.21) that, by considering the Secretary's claims of irreparable harm as part of the public interest, the majority is giving double effect to the Secretary's claims. *See Cuomo*, 772 F.2d at 978 (summarily dismissing arguments made regarding the public interest "since they essentially rehearse petitioners' arguments about the irreparable harm"). Regardless of under what heading the Court considers them, I find the Secretary's arguments unconvincing.

Even assuming that the Secretary did provide a copy of this estimate from the Defense Manpower Data Center that 832,000 veterans may be entitled to presumptive service connection under *Haas*, I am left with several questions: How many veterans suffer from a disease for which presumptive service connection based on exposure to Agent Orange is warranted? What percentage of those veterans will ever file a claim with VA? How many claims will be decided before *Haas* is finally decided? How can anyone know whether these veterans will be awarded presumptive service connection based on the Secretary's interpretation of 38 U.S.C. § 1116(f) – that is, how can anyone know that all 832,000 veterans never set foot on land in the Republic of Vietnam? How is it known that these veterans could not be entitled to service connection based upon other theories? There is simply no way to know the answers to all of these questions until such claims are adjudicated. In this regard, I note the equivocal language used in the Secretary's motion: "[T]he *Haas* decision **could** extend the presumption of exposure to herbicide **to as many as** 832,000 veterans not previously covered." Secretary's Motion at 10 (emphases added). Absent any proof provided by the Secretary, I simply cannot accept the specious suggestion that *Haas* could create entitlement for 832,000 veterans. *See Cuomo*, 772 F.2d at 977 (observing that asserted harms are tested "for substantiality, likelihood of occurrence and adequacy of proof"). Thus, I cannot find that this factor weighs in favor of granting the Secretary's motion for a stay.

## V. Balancing of the Factors

Because I do not find any of the factors to militate in favor of granting the Secretary's motion for a stay, I find that the Secretary has not proven that a stay of cases pending before VA affected by *Haas* is warranted. Thus, I would deny the Secretary's motion and I dissent from the Court's contrary holding.

The circumstances in *Standard Havens* provide an apt contrast to the circumstances in this case. In *Standard Havens*, the Federal Circuit granted a motion for a stay pending appeal after finding the moving party demonstrated (1) a substantial legal question on the merits; (2) that it would suffer catastrophic and irreparable harm should a stay not be granted; (3) that the nonmoving party presented mere speculative harm; and (4) a neutral showing as to the public interest *Standard Havens*, 897 F.2d at 516. In contrast, in this case, although I find elements (1) and (4) above to be the same as in *Standard Havens*, I find the showings regarding elements (2) and (3) above to be different from *Standard Havens*. The Secretary (the moving party) has shown only speculative possibility of harm – harm that has not been established to be irreparable – that could result from denying a stay, whereas the nonmoving parties (claimants with appeals that may be affected by *Haas*) have shown the potential for significant irreparable harm should a stay be granted.

I concede that, if the majority had shared my view that the Secretary's motion should be denied, the possibility arises that the Court might never grant a similar motion by the Secretary in the future, rendering the procedure we outlined in *Ribaudo* and *Ramsey* an empty exercise. However, several times above I observed that the Secretary has made broad, vague, specious, and wholly unsupported allegations in support of his motion. Should the Secretary present any concrete proof related to his assertions, I would be ready to revisit the balancing of harms. Providing proof

18

of asserted justifications for a stay is more than just a mere formality. Until the Secretary does so, his arguments cannot be considered anything more than speculative, and I cannot agree with the majority's decision that a stay of cases pending before VA that are affected by *Haas* is warranted at this time.[10]

I do agree that the Court cannot be oblivious to the effect of our decisions on the greater adjudication process. Nonetheless, we must consider the law above all else. VA's claims backlog has been well documented. Clearly, the goal of VA is to adjudicate all backlogged claims. The effect of today's decision is to suggest that it makes more sense to adjudicate some claims before others. It is, most likely, the most efficient result. However, the only matter for consideration now is whether the Secretary has made a showing that a stay is warranted using the four factors identified in *Ribaudo*, *Ramsey*, and *Standard Havens*. Based upon the caselaw governing stays of judgment pending appeal, I do not believe the Secretary has made the necessary showing that such a stay is warranted in this case.

KASOLD, *Judge*, dissenting: Today, the Court grants the Secretary's request to issue three stay orders pending resolution of an appeal to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) of this Court's decision in *Haas v. Nicholson*, 20 Vet.App. 257 (2006), *appeal docketed*, No. 2007-7037 (Fed. Cir. Nov. 8, 2006), to wit: (1) stay the effect of the Court's decision in *Haas*, (2) stay the processing of an estimated 1,500 claims[11] potentially affected by *Haas* that are now on appeal at the Board, and (3) stay the processing of claims by an estimated 832,000 claimants and potential claimants that may be affected by the *Hass* decision. As discussed below, the only issue properly before the Court in this case is the Secretary's request to stay the processing of the estimated 1,500 claims potentially affected by *Haas* that are now on appeal at the Board. A review of the merits of the Secretary's other stay requests should be denied for prudential, if not jurisdictional, reasons. Moreover, because the Secretary utterly fails to demonstrate that a stay in the processing of claims on appeal to the Board that might be affected by *Haas* is warranted in this instance, his request should be denied. *See Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990) (burden on applicant to make necessary showings for grant of stay). I therefore respectfully dissent from the Court's grant of the motion for a stay of proceedings below.

## I. The *Haas* and *Ribaudo* Cases

Pertinent to any discussion of the Secretary's request for the stay orders is an understanding of the *Haas* decision, the Court's recent decision in *Ribaudo*, and the Secretary's reaction to both. In *Haas*, the Court rejected a recent interpretation by the Secretary of his regulations that, for purposes of affording the presumption of exposure to herbicides provided by statute and regulation,

---

[10] Additionally, other factors might affect whether a stay is warranted, such as the seriousness of the diseases involved, the number of claims affected, or the clarity of the law after a Court decision is rendered.

[11] *See ante* at __, slip op. at 8 n. 2.

19

service in the Republic of Vietnam did not include those who served on naval ships off the coast of Vietnam even though they had been awarded the Vietnam Service Medal (VSM).[12] In rendering this holding, the Court noted the longstanding interpretation of the Secretary to the contrary, as expressed in the VA Adjudication Procedure Manual [hereinafter M21-1], the fact that this longstanding interpretation was not inconsistent with statute or regulation, and the fact that M21-1 provisions such as the one discussed in *Haas* had the force and effect of Department regulations. *See Haas*, 20 Vet.App. at 269-75. The Court further set aside changes in the M21-1 made in February 2002 because they were promulgated without notice and opportunity to comment, in violation of the Administrative Procedures Act (APA), 5 U.S.C. § 553(a). *See Haas*, 20 Vet.App. at 275-77.

After *Haas* was issued, the Secretary directed the Board Chairman to stay the processing of claims on appeal to the Board that might be affected by *Haas*. *See Ribaudo*, 20 Vet.App. at 553. The Board Chairman complied and issued Board Chairman's Memorandum 01-06-24.[13] *See id*. The Secretary also notified those whose claims might be affected by *Haas*, but whose claims were not yet on appeal at the Board, that their claims would not be processed until otherwise directed. *See* Opposition to the Secretary's Motion for a Stay Pending Appeal at 18 (filed Feb. 7, 2007) ("Opposition") (noting that several veterans "have received a letter from the VA stating that his claim might be affected by the Court's decision in *Haas*, and that the VA will not take any action on this claim until authorized to do so by the VA General Counsel"); *see also id.* at Exhibit C-G, paras. 2-5.

As a result of the Board Chairman's memorandum, Mr. Ribaudo's claim – which is pending before the Board and determined to be potentially affected by *Haas* – was stayed. Mr. Ribaudo filed a petition with the Court seeking extraordinary relief. He argued that neither the Secretary nor the Board Chairman had authority to stay the processing of claims on appeal to the Board. In *Ribaudo*, the Court generally discussed the Secretary's authority to stay the processing of claims below pending resolution of an appeal of a decision of the Court. The Court also stated that it had jurisdiction to stay the effect of any of its decisions pending appeal to the Federal Circuit and further noted that this could include staying the processing of claims below. However, with regard to the only action before the Court – Mr. Ribaudo's petition – the Court rescinded Board Chairman's Memorandum 01-06-24 that instituted the stay of cases at the Board and directed the Secretary to process the administrative appeals that had been stayed by that memorandum. *See* 20 Vet.App. at 561.

---

[12] The Vietnam Service Medal generally is awarded, inter alia, "to all members of the Armed Forces of the United States serving at any time between July 4, 1965 and March 28, 1973, in Vietnam, its contiguous waters, or airspace, thereover." Department of Defense Regulation 1348.33-M para. C6.6.1 (2006); *see also* Exec. Order No. 11,231 (1965).

[13] Given the independent status of the Board and separate statutory duty of the Board Chairman to process claims before the Board promptly, and at times expeditiously, the authority of the Secretary to direct the Board Chairman to stay the processing of claims at the Board is itself questionable. *See*, *e.g.*, 38 U.S.C. §§ 7101 (Chairman is under supervision of the Secretary, but Chairman has administrative control of the Board and Chairman may only be removed from his office by the President), 7104 ("Final decisions on such appeals shall be made by the Board."), 7107(a)(1) (claim on appeal to the Board "shall be considered and decided in regular order according to its place upon the docket"), 7112 (expeditious processing by Board of remands from Court). Nevertheless, the Board Chairman issued the stay order, and the Secretary's authority to direct him to do so is neither otherwise raised by this motion nor before the Court.

## II.  Issue Properly Before the Court

It is axiomatic that the Court should not decide matters that are not properly before it.  *See*, *e.g.*, *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."); *Skinner v. Derwinski*, 1 Vet.App. 2, 3 (1990) ("courts may not in any case, even in the interest of justice, extend their jurisdiction where none exists"); *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990) (although not constitutionally bound thereby, Court adopts "Article III case or controversy rubric" as a prudential matter).  It is also axiomatic that any stay action should be limited in its scope to restrain only those aspects of the case that give rise to the effects justifying its imposition, *see*, *e.g.*, *Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976); *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971).  In this instance, only the request to stay the processing of cases at the Board pending the appeal in *Haas* is properly before us.

### A.  Not Properly Before the Court: Whether Cases Not Yet on Appeal to the Board Should Be Stayed

Of significance to the Secretary's motion in this instance, *Ribaudo* did ***not*** direct the Secretary to process all claims and it did ***not*** rescind any action by the Secretary with regard to any claims other than those pending on appeal to the Board.  Indeed, as noted above, the Secretary has stopped processing claims not yet on appeal to the Board and potentially affected by *Haas*, and that directive has not been challenged here.  Moreover, Mr. Ribaudo is not affected by the Secretary's order staying the processing of claims not yet at the Board, which means there is no party before us with any standing to oppose the Secretary's request – there is no case or controversy with regard to claims potentially affected by *Haas* but not yet before the Board.

Assuming arguendo that the Secretary does not have the authority to stay claims not yet on appeal to the Board, and that is a big assumption, *see Ribaudo*, 20 Vet.App. at 554 n. 2 (stating that the Court would render clear in its decision the scope of the Secretary's authority to stay processing of claims, and then holding in that decision only that, absent regulation, the Secretary did not have authority to stay processing of claims at the Board as doing so contravened section 7107); *Tobler v. Derwinski*, 2 Vet.App. 8, 12 (1991) (holding that "it would be reasonable for the Board to stay its proceedings in a case that arguably falls within the precedent" of another on appeal (quoting *Ithaca Coll. v. NLRB*, 623 F.2d 224, 228 (2d Cir. 1980)); *see also Ribaudo*, 20 Vet.App. at 562 n.7 (Kasold, J., concurring in part and dissenting in part) (noting that the opinion in *Ribaudo* has no application to whether the Secretary may stay claims not yet at the Board); *but see Ramsey v. Nicholson*, 20 Vet.App. 16, 37 (2006) (stating in dicta that the Secretary did not have authority to stay claims not yet at the Board pending an appeal of a decision of this Court), the Court should decide that issue only when properly presented as a case or controversy, with parties of interest on each side.  *See Mokal*, *supra*; *see also Shoen v. Brown*, 6 Vet.App. 456, 457 (1994) (Court does not issue advisory opinions).

21

Prudential reasons also argue for not opening the proverbial Pandora's Box.[14]   Whereas *Ribaudo* rescinds the administrative stay of claims on appeal to the Board that are potentially affected by *Haas* (about 1,500), the majority today exercise authority over all claimants whose claims might be affected by *Haas*, including those *potential* claimants who *may* file claims that might be affected by *Haas*, (estimated by the Secretary as over 832,000[15]), and issue a stay in the processing of those claims, filed and yet to be filed.

The Court is ill-equipped to step into the management of claims-processing by the Secretary. *See* 38 U.S.C. § 303 (Secretary is responsible for the "control, direction, and management" of the department); *cf. Norton v. So. Utah Wilderness Alliance*, 542 U.S. 55, 66-67 (2004) (noting that "[i]f courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved – which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management").   Indeed, this very fact underlies the balance struck in recognizing an agency head's general authority to stay the administrative processing of matters pending an agency appeal of a case affecting those matters.  *See Tobler*, *supra*.

As we stated in *Ribaudo*, it is the statutory mandate of 38 U.S.C. § 7107 – that claims on appeal to the Board be processed promptly and in regular order – that restricts the Secretary or the Board Chairman from staying claims on appeal to the Board pending an appeal of a decision of the Court and in the absence of any regulation authorizing such action.[16]   The number of claims potentially affected by our review of stay requests related to claims on appeal to the Board that might be affected by a decision of the Court that the Secretary has appealed will necessarily be a much smaller number than the entire universe of claims below, and much more amenable to judicial

---

[14]  "Zeus, determined to avenge himself on Prometheus, presented this femme fatale to Epimetheus (Prometheus' brother), first arming her with a jar containing all the evils of the world.  After Epimetheus foolishly accepted the gift, Pandora proceeded to open the jar, thereby loosing a panoply of torments upon humanity." *United States v. Watson*, 386 F.3d 304, 308 n.2 (1st Cir. 2004) (citing R. Warner, ENCYCLOPEDIA OF WORLD MYTHOLOGY 29-31 (1975)).

[15]  This number of actual and potential claims – 832,000 – is a red herring and is for consideration, if at all, only as the totality of claims affected by *Haas* should the Secretary's appeal be denied.  Regardless of the Secretary's success on appeal, each claim still requires processing, and there is no basis for concluding all of these claims would be submitted, processed, and paid before the Federal Circuit renders its decision.  Whatever the number is, however, it is certainly larger than the estimated 1,500 claims on appeal to the Board that might be affected by *Haas*, and it is good reason to not substitute the Court for the Secretary in deciding whether all of these claims should be stayed in the first instance.

[16]  As noted in my concurrence in *Ribaudo*, there are no regulations currently extant that provide authority for the Board Chairman to stay claims at the Board pending an appeal of a decision of the Court.  *See* 20 Vet.App. at 561 (Kasold, J., concurring in part and dissenting in part).  Because such regulations have not been promulgated, the Court need not decide whether authorizing a stay at the Board would be a permissible exercise of the Secretary's authority under 38 U.S.C. § 501.

consideration of the matter. *See Norton*, *supra*. Our review of the motion should be limited to the request for a stay of claims on appeal to the Board. *See Hines* and *Dellinger*, both *supra*.

### B. Not Properly Before the Court: Whether the Effect of *Haas* Should Be Stayed

With regard to the Secretary's request that the Court stay the effect of the *Haas* case, I agree with my dissenting colleagues that such a request should be brought under that case, as instructed in *Ribaudo*. I note, however, that the heart of the Secretary's request is not the stay of the effect of *Haas*; it is staying the processing of the claims potentially affected by *Haas*. Under the circumstances, a grant of the latter obviates any need for the former because *Haas* will not be applied as long as the processing of claims potentially affected by *Haas* is stayed. Thus, there is no need to decide whether the effect of the *Haas* decision should be stayed and, absent that need, a stay should not be granted.[17]

### C. Properly Before the Court: Whether Claims on Appeal to the Board Should Be Stayed

As noted, in *Ribaudo* we rescinded Board Chairman's Memorandum 01-06-24 and directed the Secretary to process claims on appeal at the Board previously stayed by the Board Chairman's Memorandum. In essence, by requesting the Court to now stay the processing of those claims, the Secretary is asking us to stay the effect of our decision in *Ribaudo*. The parties have opposing interests in this matter, thus presenting a case or controversy, and we have jurisdiction to stay the effect of our cases, which can include staying the processing of claims, as we stated in *Ribaudo*. *See* 20 Vet.App. at 560. Thus, the issue of whether claims potentially affected by *Haas* that are on appeal to the Board should be stayed is an issue that is properly before us, and it is the only issue that we should decide. *See Mokal*, *supra*.

### III. The Secretary Utterly Fails To Establish the Basis for Granting a Stay

In assessing whether a request for stay should be granted, the Court must consider whether the moving party has made a strong showing regarding the likelihood of success on appeal, whether there is irreparable harm to the moving party, whether the issuance of a stay will substantially injure other parties interested in the proceeding, and whether the public interest is furthered by a stay. *See Ribaudo*, 20 Vet.App. at 560 (restating the test enunciated in *Standard Havens Prods., Inc.*, 897 F.2d at 512); *see also Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 n. 7 (Fed. Cir. 1983) (where likelihood of success "is less forceful . . . a movant would have to make a stronger showing of irreparable harm in order to tip the balance of equity in his favor"). However, the factors need not be given equal weight.

---

[17] I note that the factors weighing against granting a stay in the processing of claims at the Board generally are applicable to consideration of a stay in the effect of the *Haas* decision, with the latter having the added factor that a stay in the effect of *Haas* without a concomitant stay in the processing of claims would seem to serve nobody's interest, as least as articulated in the pleadings, because claims would be denied, to the dissatisfaction of the veteran, only to potentially give rise to the concern of the Secretary that they would then have to be readjudicated.

When the moving party fails to establish a strong likelihood of success on appeal, the Court may grant the stay when the moving party demonstrates a substantial case on the merits – that is, "'questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation'" – but only when the other three factors noted above collectively weigh heavily in the moving party's favor. *Standard Havens Prods., Inc.*, 897 F.2d at 513 (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)); *see also Alaska Cent. Express*, *Inc. v. United States*, 51 Fed. Cl. 227 (2001) (if equities weigh heavily in favor of maintaining status quo, court may grant injunction where question raised is novel or close). In essence, the "more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387-88 (7th Cir. 1984).

## A. First Factor – Likelihood of Success

Assessing the likelihood of success is perhaps the most difficult of the factors because, in a real sense, it calls upon a Court to assess its own opinion. In a district court decision or a single judge decision of this Court, the likelihood-of-success analysis truly involves critiquing one's own decision. In this case, however, the underlying decision, *Haas,* was issued by a three-judge panel of the Court, and the likelihood of success is being assessed by the full Court, including four judges that were not on the panel that issued the *Haas* decision.

In its essence, the Court in *Haas* simply found that a longstanding interpretation of the Secretary as reflected in the M21-1 is not inconsistent with statute or regulation, that the M21-1 had the force and effect of regulation, and that the Secretary's recently revised interpretation of statute and regulation was not to be given deference in light of his previous and longstanding interpretation. Further, the Court found that a recent revision of the M21-1 had no effect, and it was set aside because it was modified without notice and opportunity to comment in violation of the APA. Because, as the majority note, the Federal Circuit has no jurisdiction over the Court's finding with regard to facts, *see* 38 U.S.C. § 7292; *Forshey v. Principi*, 284 F.3d 1335, 1359 (Fed. Cir. 2002) (en banc), the Court's finding that the Secretary had a longstanding interpretation of statute and regulation that was recently modified is significant. This finding strongly supports the decision in *Haas* that the Secretary's recently revised interpretation should not be given deference. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n. 30 (1987) (maintaining that an agency's interpretation of a statute or regulation that conflicts with a prior interpretation is "'entitled to considerably less deference' than a consistently held agency view" (quoting *Watt v. Alaska*, 451 U.S. 259, 273 (1981))). Moreover, settled case law underlies the conclusion in *Haas* that the substantive provisions of the M21-1 addressing service in Vietnam for purposes of the presumption of exposure to herbicides have the force and effect of law. *See Haas*, 20 Vet.App. at 276-76 (citing *Hamilton v. Derwinski*, 2 Vet.App. 671, 675 (1991), and *Fugere v. Derwinski*, 1 Vet.App. 103, 107 (1990)).

The majority avoid any characterization that there is a likelihood of success on appeal, and focus instead on the serious and substantial nature of the issues, as well as the novelty of the issue. The majority's analysis, however, ignores the fact that this factor does not stand alone. Rather, even

24

when there is a serious and substantial issue involved, the totality of the equities nevertheless *must weigh heavily* in favor of the status quo before a stay should be granted. *See Standard Havens Prods., Inc.*, 897 F.2d at 513; *Alaska Cent. Express, Inc.*, 51 Fed. Cl. at 230 (if equities weigh heavily in favor of maintaining status quo, court may grant injunction where question raised is novel or close (citing *Standard Havens Prods., Inc*, 897 F.2d at 513)). As is shown below, the Secretary utterly fails to demonstrate that the remaining factors weigh in his favor at all, let alone heavily in his favor. Indeed, accepting arguendo the majority's conclusion that factors one and four weigh in favor of the Secretary while factors two and three weigh in favor of the nonmoving parties, even the majority do not characterize the equities as weighing *heavily* in favor of the status quo.[18] *See Standard Havens Prods., Inc.* and *Alaska Cent. Express, Inc.*, both *supra*.

## B. Second Factor – Irreparable Harm

The risk of *any* harm to the Secretary in proceeding to process claims at the Board is minuscule in the grand picture, and the risk of irreparable harm is nonexistent. Even if – as the Secretary posits without presenting any factual basis[19] – the decision in *Haas* could extend the presumption of Agent Orange exposure to approximately 832,000 veterans not previously covered, the order in *Ribaudo*, as noted, affects only the processing of the 1,500 claims pending before the Board. Moreover, it is unlikely that all 1,500 of these claims will be processed prior to a Federal Circuit decision in *Haas* because there is a statutorily prescribed order of processing of claims at the Board, which in fiscal year 2006 decided 39,076 claims, with 40,265 pending at the end of the year.[20] Similarly, during the appeal period, the amount of money awarded and paid with regard to claims on appeal to the Board is limited, and any payments made may be recouped should the Secretary prevail on appeal. *See* 38 C.F.R. §§ 3.105(d), 3.114(b) (2006) (providing for severance of service connection because of a change in or interpretation of a law); *see also* 38 C.F.R. § 1.911 (2006) (procedure for collection of debts owed by reason of participation in a VA benefits program).

Further, with regard to administrative burdens and costs, the claims potentially affected by *Haas* will have to be processed in any event, so the only additional burden or cost associated with processing them now is that related to future recoupment efforts. Although the majority highlight this additional burden associated with about 832,000 potential claims, the burden is orders of magnitude less when considering only those claims on appeal to the Board. Moreover, the costs of administering the effect of an appeal has been rejected as a factor for consideration in whether a stay should be granted or denied. *See UST, Inc. v. United States*, 831 F.2d 1028, 1032 (Fed. Cir. 1987)

---

[18] Relying on *Standard Havens Prods., Inc.*, 897 F.2d at 512, the majority seem fixated on the notion that the grant of a stay "rests entirely within our discretion." *Ante* at __, slip op. at 4. The Secretary, as movant, carries the burden to make the necessary showings for grant of a stay, *see Standard Havens Prods., Inc.*, 897 F.2d at 512, and he fails to meet that burden.

[19] The Secretary has provided the Court nothing but his bare and bald assertion – no affidavit, no historical data, nothing. *See also supra* note 15.

[20] *See* Report of the Chairman, Board of Veterans' Appeals, Fiscal Year 2006, at 21.

25

(expenses and effort involved in litigation do not constitute "irreparable injury").  Simply stated, and as even determined by the majority, any harm to the Secretary is not irreparable; it is not "a viable threat of serious harm which cannot be undone."  *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983).

C. Third Factor – Substantial Injury to Other Parties Interested in the Proceeding

In contrast to an assessment of the effect on the Secretary, which involves an assessment of any "irreparable harm," the third factor looks to whether the issuance of a stay will cause "substantial injury" to parties interested in the proceeding.  *See Capacchione v. Charlotte-Mecklenburg Schools*, 190 F.R.D. 170, 175 (W.D.N.C. 1999).  Given the nature of the claims in question – disability compensation claims of veterans who served in Vietnam during the war – the harm to the individual veteran whose claim is stayed pending appeal is significant. *See Cervantez v. Sullivan*, 719 F. Supp. 899, 906 (E. D. Cal.1989) (rejecting argument that retroactive payment of disability benefits remedied denial of claim later found to be improper); *see also Schweiker v. Chilicky*, 487 U.S. 412, 428 (1988) (stating that a wrongful termination of benefits upon which a claimant "depend[s] for the very necessities of life cannot be fully remedied by the 'belated restoration of back benefits'"); *Leschniok v. Heckler*, 713 F.2d 520, 524 (9th Cir. 1983) ("We fail to comprehend the Secretary's argument that financial compensation at some future date, should the claimants survive and prevail, mitigates the hardship which is visited upon claimants and their families each and every day.").

In opposition to the Secretary's request for a stay, information has been submitted with regard to two veterans who served in the Navy during the Vietnam War and were awarded the VSM, and whose claims are on appeal to the Board and affected by the Court's decision herein.  In one case, a veteran was diagnosed with diabetes mellitus, peripheral neuropathy related to the diabetes that may be related to Agent Orange exposure, and several other disabilities.  His only source of monthly income is $1,332 in Social Security Disability Income.  His claim has been pending since 2003.  He asserts that he can afford to pay for prescriptions, groceries, and utilities, but cannot afford to purchase anything other than the absolute necessities of life and cannot pay off any debt, thus causing a great deal of stress and economic hardship.  *See* Opposition at Exh. E.

In the other case, a veteran was diagnosed with chronic lymphocytic leukemia (CLL) that may be related to Agent Orange exposure.  His only source of monthly income is $1,600 in Social Security Disability Income.  His claim has been pending since 2004.  He asserts that he has completely depleted his savings and retirement accounts, has been unable to pay back-taxes owed, cannot afford to pay part of his child-support payments, and has been harassed by bill collectors because he has been unable to pay approximately $1,000 in hospital bills related to his CLL.  He further asserts that his insurance and utility expenses are $1,000 a month, that he cannot afford homeowner's insurance, has difficulty maintaining the most basic lifestyle, and cannot afford to take his children for an inexpensive meal when he has custody of them.  *See* Opposition at Exh. G. I wholeheartedly agree with the majority in its conclusion that "the delay suffered by these claimants is consequential," *ante* at __, slip op. at 6, but I further note that these are only two examples out of

1,500 claims pending decision by the Board; we can only speculate how many of these veterans whose claims are stayed at the Board are similarly afflicted.

## D. Fourth Factor – Public Interest

The final factor, in this instance, is the easiest to assess because it weighs extraordinarily against the Secretary, and screams in favor of not granting the stay. As President Abraham Lincoln so movingly and profoundly stated: "To care for him who shall have borne the battle and for his widow, and his orphan." This is not only the motto of VA, it is a core value of our Nation. It is expressed in numerous ways, not the least of which is the "uniquely pro-claimant character of the veterans' benefits system" created by Congress, *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1349 (Fed. Cir. 2003). This system provides the benefit of the doubt to the claimant when the evidence does not weigh against the claim, *see* 38 U.S.C. § 5107(b). It also requires the prompt rendering of decisions in regular order by the Board, *see* 38 U.S.C. § 7107, the expeditious rendering of decisions by the agency of original jurisdiction on remand from the Board, *see* 38 U.S.C. § 5109B, and the expeditious rendering of decisions by the Board on remand from the Court, *see* 38 U.S.C. § 7112.

It is well recognized that the fact claims involve Social Security disability compensation is a factor that weighs heavily against a stay in the processing of those claims; more so veterans benefits! *See Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983), *rev'd on other grounds*, 463 U.S. 1328 (1983); *see also Walters v. Nat'l Assoc. of Radiation Survivors*, 473 U.S. 305, 312 (1985) (acknowledging that VA benefits are similar to the Social Security benefits). Indeed, in such cases,

> the question of the public interest is inseparable from the issue relating to the relative hardship suffered by litigants. . . . It is not only the harm to the individuals involved that we must consider in assessing the public interest. Our society as a whole suffers when we neglect the poor, the hungry, the disabled, or when we deprive them of their rights or privileges. Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required. It would be tragic, not only from the standpoint of the individuals involved but also from the standpoint of society, were poor, elderly, disabled people to be wrongfully deprived of essential benefits for any period of time. It would be unfortunate, but far less harmful to society, were the government to succeed in overturning the preliminary injunction but be unable to recoup all or a portion of the funds.

*Lopez*, 713 F.2d at 1437-38. The public interest is inseparable from the government's interest in providing for the public welfare, and when, as here, the balance of the other factors weigh in favor of the veteran, the balance is overwhelmingly in favor of denying a stay that would delay the processing of veterans claims. *See id.* at 1437.

27

Further, directly pertinent to this case is the fact that Congress has explicitly expressed public policy in 38 U.S.C. § 7107 to the effect that claims on appeal to the Board are to be processed promptly and in regular order with limited deviation from that regular order, as we so recognized and held in *Ribaudo*. The examples discussed in the above section certainly underlie this Congressional intent, and they exemplify why issuance of a stay in the circumstances of this case amounts to a rejection of that Congressional intent. Moreover, although section 7107 was enacted before creation of the Court, it has been amended on several occasions since that time without any authorization or indication that claims should be stayed at the Board pending appeal of a case that might affect a decision on those claims. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to legislation it enacts."). This is not to say the Court could not grant a stay in the processing of claims at the Board should the other factors warrant it, but public policy, standing alone, weighs against doing so, as does the totality of the circumstances in this instance.

Although in its discussion of possible irreparable harm suffered by the Secretary the majority consider the need on the part of the Secretary to institute efforts to recoup payments made to veterans should *Haas* ultimately be overturned, the analysis is faulty because it runs off the red herring estimate of over 832,000 potential claims being processed pending resolution of the *Haas* appeal.[21] It is also interesting that the en banc Court in *Ribaudo* criticized the scope of Board Chairman's Memorandum 01-06-24 for the very reason that it was not limited to a stay pending decision by the Federal Circuit, but could extend for many years until decision by the Supreme Court or even legislative action by Congress, *see Ribaudo*, 20 Vet.App. at 559, yet the majority today lay out this very possibility of an extended delay in the adjudication of the appeals in *Haas* – during which the majority note that possibly hundreds of thousands of claims might be processed and paid only to require recoupment action to the detriment of the processing of other claims should *Haas* be overturned – as a public policy consideration in favor of *granting* the stay. The Secretary's unsupported argument not only grossly exaggerates the effect of not granting a stay,[22] this type of extreme-potential-fear analysis ignores the reality that the very creation of the Court and the right to judicial review carry with it the

---

[21] In search for public policy the majority give the possibility of recoupment action double duty in that this possibility also forms the basis of the majority's analysis as to harm, albeit not irreparable, that the Secretary might encounter should a stay not be directed and his appeal ultimately granted. *See Cuomo v. Nuclear Regulatory Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985) (summarily dismissing arguments made regarding the public interest "since they essentially rehearse petitioners' arguments about the irreparable harm").

[22] The Secretary was expected to process some 910,000 claims, with the Board processing about 39,000 appeals, in fiscal year 2006. In this context, even if recoupment action were necessary with regard to all of the approximately 1,500 claims on appeal to the Board that might be affected by *Haas,* the effect on the overall processing of all claims below would be insignificant, and just another course of business. Similarly, the dollars associated with the claims at the Board that might be affected by *Haas*, even if all were processed during the appeal period, is insignificant in a budget that allocated approximately $31.3 *billion* to veterans' disability compensation claims in fiscal year 2006. *See* Budget of the United States Government, FY 2006, at http://www.whitehouse.gov/omb/budget/fy2006/veterans.html (last visited Mar. 23, 2007). In further contrast, this pales in comparison to the billions spent on fighting the Vietnam War, which was fought by the veterans affected by any stay in this case. Unlike those expenses, the Secretary can stop the payment of benefits if he is successful on appeal, and he can initiate recoupment proceedings if he so deems it appropriate.

fact that the Secretary has to readjudicate thousands, even hundreds of thousands of claims, based on our decisions on a regular basis, necessarily delaying the processing of other claims. This is a cost of judicial review and a very reason why the costs of implementing judicial decisions are not a factor to consider when assessing whether to stay actions below. *See UST, Inc.*, *supra*.

## IV. Partial Grant of a Stay

In apparent recognition that its broad stay order will ensnare many whose individual circumstances cry out for prompt decision as well as apparent recognition of the futility of having every such individual apply to the Court for an exception to the stay, the majority explicitly note that the Secretary has equitable authority that is not bounded by the stay order. The majority also carve out an exception to the stay order that permits the Board to process cases before it. Both are illusory relief from the harsh effects of the stay, akin to telling the chicken he is safe because he is guarded by the fox. The Secretary has appealed *Haas*. He does not want to process claims affected by *Haas* – indeed, that is the basis of his motion for a stay – and, given the option not to, there is absolutely no reason to conclude that he would grant equitable relief or that the Board would process a claim applying a decision with which the Secretary disagrees. *Cf. Padgett v. Nicholson*, 473 F.3d 1364, 1370 (Fed. Cir. 2007) (finding it reasonable to believe, absent direction otherwise, that the Secretary will continue in his course of action).

## V. Conclusion

In this instance, the only issue properly before the Court is the Secretary's request to stay the processing of claims on appeal to the Board that might be affected by the *Haas* decision, which is now on appeal to the Federal Circuit. The Secretary falls far short of demonstrating that the processing of claims on appeal to the Board should be stayed. He has not demonstrated a substantial likelihood of success on appeal in the *Haas* case. To the degree the issues on appeal are serious and substantial, he has not demonstrated that the other factors weigh heavily in favor of the status quo, to wit: he has not demonstrated that he would suffer irreparable harm, that other parties interested in the proceeding will not suffer substantial injury, or that public policy weighs in favor of a stay. Indeed, the totality of the circumstances and facts in this case overwhelmingly demonstrate just the opposite.[23] There is simply no basis for granting the Secretary's motion, and it should be denied.

---

[23] The grant of a stay under the circumstances of this case – with, among other factors, unsubstantiated and patently inflated representations that the Secretary would be forced to decide hundreds of thousands of claims and suffer significant burdens related to those decisions – makes it difficult to envision under what circumstances a stay request will be denied (short of perhaps an arbitrary and capricious request – which, as a practical matter, shifts the burdens of proof from the Secretary to the veteran). It also effectively places the Court in the position of providing a rubber-stamp approval for the Secretary to do exactly what the en banc Court unanimously held in *Ribaudo* that statute and congressional policy precluded him from doing. *See Ribaudo*, *supra*; *see also N.L.R.B. v. Brown*, 380 U.S. 278, 291 (1965) ("Reviewing courts are not obliged to stand aside and rubberstamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.").